Choteau *vs.* Jones *et al.*

CHARLES CHOTEAU, appellant, *vs.* GEORGE W. JONES *et al.*, appellees.

*Appeal from Jersey.*

Held that a description of lands in a deed, such as "two entire sections of land in the Marine Settlement, and state of Illinois, and patented to the said John Rice Jones," the grantor, was sufficiently definite and certain, as the locality was well known, and upon examination of the proper records, it could be ascertained which two sections of land had been patented by the grantor; but if it should appear by the records, that more than two sections had been entered, or that no lands in that settlement had been entered by the grantor, then the description would be void.

A deed, clearly appearing on its face to be a voluntary conveyance, although good between the parties, is fraudulent and void as against pre-existing creditors of the grantor.

The relation of debtor and creditor between principal and surety, so as to entitle the surety to avoid a voluntary conveyance, made by his principal, commences at the date of the obligation by which the surety becomes bound, and not from the time he makes payment.

The law of 1819 did not confer upon a notary public authority to take and certify the acknowledgment or proof of a deed.

An administrator cannot avoid a voluntary deed of his intestate, nor can he take advantage of a fraudulent conveyance made by his intestate. But where A executed and delivered to his two sons, B and C, a voluntary deed of lands, himself being indebted at the time, which deed was not recorded so as to be notice to creditors and *bona fide* purchasers, and afterwards, on the death of A, his administrator, who held the title papers to said land, and the public records showing that A died seized of the premises, applied to the Circuit Court for an order to sell said lands, in accordance with the statute, which order was granted, and the said lands were sold under said order—the said B and C having been made parties to said suit, and interposed no defence or claim to said lands: Held that creditors and purchasers had the right to conclude, and to act on the conclusion, that the said lands belonged to the intestate at the time of his death, and that B and C had no other interest therein than as heirs at law of their father; that the purchasers at such sale of the administrator succeeded to all of the rights of the creditor, in fraud of whom the voluntary conveyance was made; and that they are entitled to the benefit of the statute of frauds equally as the creditor himself.

A purchaser at a tax sale of land, in which he has an interest as heir, acquires no additional title.

A party, who claims title to land, which is listed for taxation in his name, acquires no greater interest by permitting it to be sold for taxes, and purchasing it himself.

11 300
26a 192
11 300
129 215
29a 136
11 300
130 136
11 300
136 269
11 300
149 413
11 300
163 423
11 300
166 539
11 300
71a 494
11 300
179 66
11 300
182 206
11 300
e196 357

The doctrine is now well settled that a *bona fide* purchaser, for a valuable consideration, and without notice, either from a fraudulent grantor or grantee, shall be protected.

Our statutes relative to the recording of deeds, &c., applies equally to administrators' deeds as to other conveyances; and where, as in this case, the contest is between a purchaser succeeding to the rights of the creditors of the fraudulent grantor and *bona fide* purchasers from the fraudulent grantees, the parties are equally meritorious and innocent, but the law wisely favors the most vigilant, and he who first places his title on record must prevail.

This is a bill in chancery, filed in the Madison Circuit Court on the 7th March, 1844, to set aside and cancel a certain deed of conveyance of two sections of land, situate in that county, of the date of January 31, 1824, from John Rice Jones to his sons, George W. Jones and William P. Jones.

The bill sets forth that, on 10th November, 1821, John Rice Jones, administrator of one Thomas Brady, deceased, executed his bond to the Governor of Missouri, being an administration bond, for the faithful administration of the estate of Brady; and that one Pierre Choteau was his security on the bond. That on the first day of February, 1824, the said John Rice Jones departed this life intestate, leaving numerous heirs, who are named and made parties defendants to the bill. That on the 10th November, 1825, the said Governor, suing for use of D. B. Hill and Absalom Keese, in the Circuit Court of St. Louis, sued on the bond of said Pierre Choteau, as the security of said John Rice Jones, deceased, for breaches of the condition by him in his life time; and at the November term, 1826, recovered judgment for $6,000, the penalty, with costs, &c., upon which judgment execution was awarded for $3,032 08, the damages occasioned by the breaches; which judgment was, at the November term, 1827, on appeal to the Supreme Court, affirmed, but was afterwards enjoined, except $1,928, part thereof, and interest thereon, to $118 89, and service and commission to $23 36; also costs of suit to $40—amounting in all to $2,110 28¾; and this sum was collected from the said Pierre Choteau. That George W. Jones, one of the defendants, and son of the said John Rice Jones, on 3d March, 1826, in Randolph county, Illinois, administered on the estate of the said deceased; and that, at the August term of the Randolph Circuit Court, 1829, the said Pierre Choteau commenced suit against the said George W. Jones, as administrator of the said John Rice Jones, deceased, and at the August term, 1830, recovered judgment in that suit for $2,402 20.

This judgment, so recovered as aforesaid, was for the amount of money paid by Pierre Choteau as the security for John Rice Jones, deceased, and the interest thereon—and said George W. Jones had full notice of this fact, &c. The letters of administration granted to George W. Jones, were revoked on 3d December, 1832, and on the 8th of July, 1844, Harvey Clendinnin, the public administrator for Randolph county, was appointed administrator of John Rice Jones, deceased, and the personal estate was insufficient to pay the claims against the estate ; and the said Pierre Choteau was a creditor of the estate, and his claim filed against the estate, being balance of his original claim, amounted to $ 1,370 85, with interest thereon from 13th January, 1830. That the personal estate of the said John Rice Jones being insufficient to pay the debts against the estate, the administrator, Harvey Clendinnin, applied to the Circuit Court, at the April term, 1835, and obtained an order to sell the lands mentioned in his petition, among which are sections fourteen and twenty-three, township four north, range seven west, in Madison county, for the payment of the debts of deceased.

Said John Rice Jones was the patentee of said lands, and had before his death acquired a complete legal title in fee simple ; and the administrator, Clendinnin, in pursuance of said order, and after due notice given, on the 3d day of August, 1835, at Kaskaskia, sold those lands at public auction, and Pierre Menard, jr. bid the highest price for section fourteen, township four north, range seven west, to wit, $ 800 ; and it was struck off to him ; and the said Harvey Clendinnin, as administrator, on the 4th of August, 1835, made and delivered to him a deed for last named tract of land. And at the time, place, and manner aforesaid, the said Harvey Clendinnin sold to complainant said section twenty-three, township four, range seven west, for the sum of $ 800, and made and delivered to him a deed therefor on the 4th August, 1835. That, on 22d day of December, 1840, the said Pierre Menard, jr., and Caroline, his wife, conveyed to complainant said section fourteen; so that complainant is the sole owner of said two sections of land in Madison county.

The said John Rice Jones being indebted to the Governor of Missouri as aforesaid, shortly before he died, to wit, on the 31st of January, 1824, made a certain deed to his son, George W. Jones, one of the defendants, and William P. Jones, in conside-

ration, as is stated in said deed, of love and affection, and without any valuable consideration, conveying to his said sons several tracts of land, and amongst others, two tracts of land, described as "two entire sections of land in the Marine Settlement;" adding no other or further description thereto.

The said George W. Jones and William P. Jones have claimed the two sections, which are fully described in the deeds through which complainant derives title, by the deed made by John Rice Jones, wherein two sections in the Marine Settlement are attempted to be conveyed to them; and the said John Rice Jones made said conveyance for the purpose of defeating the claims of his creditors, and without valuable consideration; and the said George W. Jones and William P. Jones had notice thereof, and knew that John Rice Jones was the administrator of the estate of the said Thomas Brady, and had executed his bond for the faithful administration of said estate to the Governor of Missouri, for the use of such persons as were interested in the settlement of said estate; and the said George W. Jones had full knowledge, soon after his father's death, that suit had been commenced on said administration bond against Pierre Choteau, one of his securities, and that judgment had been obtained; and also, that Pierre Choteau had paid said judgment; that he had notice of the suit instituted against him as administrator of his father's estate by said Choteau, and was a party to the judgment obtained in the Randolph Circuit Court, and knew the other legal claims against the estate of his father; and had notice of the application of Harvey Clendinnin, the administrator, for the sale of the various tracts of land alleged to be his father's, or subject to the payment of his debts, including the said sections fourteen and twenty-three, and of the order of Court made in pursuance thereof, and of the subsequent sale to Pierre Menard and complainant. But the said defendant, Jones, continued to claim the lands purchased by complainant, and exercised acts of ownership over the same; and that, in order to obtain a less questionable title to the land of which or that part of which he claimed to be the owner, he fraudulently suffered the same to be sold for taxes due for 1832, and did buy them in at the tax sale, and obtained deeds for the same, (describing them,) from the Auditor of the state of Illinois, all bearing date 25th February, 1833, thereby intending to defeat the just claims of the

creditors of the said John Rice Jones, and to convert the land, which ought to have been made the fund to satisfy the debts against the estate, into lands of his own, and put it beyond the reach of the creditors of the same.

After the obtaining by said Clendinnin of said order of sale, and after the making of the sale of the said sections fourteen and twenty-three, and the execution of deeds therefor, to the said Pierre Menard, jr., and complainant, the said George W. Jones conveyed, or attempted to convey away, portions of said sections of land, as follows : (naming the persons, being defendants to the bill, and the several portions of said sections to them conveyed respectively, and the dates of the several and respective conveyances to them.)   All which conveyances were made fraudulently, and for the purpose of defeating the creditors of the estate of said John Rice Jones, and after he had full notice of the proceedings in the Randolph Circuit Court, and of the sale of said lands by the said Harvey Clendinnin, administrator as aforesaid, under the order of said Court ; also, the subsequent purchasers had legal notice of all these facts.   And the said George W. Jones still claims to be owner of south half of south east fourteen, and the east half of section twenty-three.

The bill concludes with a prayer for specific as also for general relief.

George W. Jones, in his answer, admits it may be true that his father, John R. Jones, together with Pierre Choteau, entered into administration bond on the estate of Thomas Brady, deceased, to Governor of Missouri, 10th November, 1821 ; the death of John Rice Jones, intestate, on 31st January, 1824, and that his heirs now living are John Rice Jones, Myers F. Jones, Augustus Jones, Maria Jones, and this defendant, George W. Jones ; and his heirs, who have departed this life, leaving issue, as set forth in the bill, are Harriet Jones, afterwards Harriet Scott, Eliza Jones, afterwards Eliza Scott, and William P. Jones ; that it may be true that Pierre Choteau was sued on said bond and judgment obtained, and submits same on such proof and exhibits as plaintiff may adduce.

Defendant believes the administrators of John Rice Jones, *i. e.* self and Augustus Jones, had sufficient and now have sufficient assets to pay off his debts in Missouri ; defendant administered on the estate of his father in Randolph county, Illinois, and

Pierre Choteau, at August term, 1829, of Randolph Circuit Court, Illinois, commenced suit against defendant for the recovery of moneys alleged to be due from his late father, and recovered a judgment for $ 2,402 20, and costs of suit. Denies all knowledge that the judgment recovered against him as administrator of John Rice Jones, in the Randolph Circuit Court, by Pierre Choteau, was for money paid by said Pierre, as the security of John Rice Jones, deceased; and denies all personal notice that said Pierre Choteau was at any time security for the said John Rice Jones, or that he, as such security, had any money to pay for John Rice Jones, deceased; also, all knowledge of the appointment of Harvey Clendinnin, to be administrator of John Rice Jones, or that any Court had ordered a sale of the lands in controversy; and that John Rice Jones, at the time of his death, or his representatives since, had title to sections fourteen and twenty-three. Denies that Clendinnin, as administrator of John Rice Jones, deceased, had any right to dispose of sections fourteen and twenty-three, to pay his debts. Has paid in taxes and redemption money for sections fourteen and twenty-three, out of his private funds, sufficient, when consolidated, to pay for them at low price—and that what he has paid in taxes, and what he has advanced to his brother, William P. Jones, in cash and payment of debts due by him, together with a fair compensation for loss of time in attending to same, when consolidated, would pay for sections fourteen and twenty-three, at their present value. Knows nothing of conveyance from Pierre Menard, jr. to complainant, but insists that a deed from P. M., jr. and wife, could not vest a title in complainant. Denies that John Rice Jones was indebted to the Governor of Missouri on his administration bond, about the estate of Brady, but not that a recovery may have been had after his death against his security. On 31st January, 1824, John Rice Jones, in consideration, as well of love and affection as of the sum of $ 1, conveyed to this defendant, and his brother, William P. Jones, two entire sections of land in the Marine Settlement, in Illinois, thereby intending to convey sections fourteen and twenty-three, in township four north, of range seven west, in Madison county; the said sections being the only ones owned or claimed by John Rice Jones in the Marine Settlement, in the state of Illinois, Madison county; and the Marine Settlement being well known, and the only one then

39

or since bearing that name, or lying in Madison county, and state of Illinois. Which said deed and acknowledgment are as follows:

" This indenture, made this thirty-first day of January, 1824, between John Rice Jones, of the one part, and George W. Jones and William P. Jones, of the other part, witnesseth: that the said John Rice, in consideration of the love and affection he bears his sons, the said George W. Jones and William P. Jones, and for the further consideration of one dollar, in hand paid, doth hereby grant, give and convey unto the said George W. and William P., two entire sections of land, lying and situate in the Marine Settlement, and state of Illinois; also, the north-east quarter section twenty-three, north-west quarter section twenty-four, south-east quarter section eleven, north-west quarter section twenty-four, north-east quarter section thirty-four, south-west quarter section thirty-one, north-east quarter section thirty-one, in township eight south, range five, situate in the state of Illinois; also, the south-east quarter section thirty, township nine, north-west quarter section three, township ten, range three west, and the fractional section nine, township nine, range five west; all situated in the state of Illinois, and patented to the said John Rice Jones: to have and to hold the said several tracts or parcels of land above described to the said George W. and William P. Jones, their heirs and assigns, forever. In witness whereof, he, the said John Rice Jones, has hereunto subscribed his hand and affixed his seal, the day and year first above mentioned.

" JOHN RICE JONES, (SEAL.)

" Sealed, signed and delivered, in
presence of   *B. G. Farrar,*
                *D. V. Walker,*
                *G. F. Strother.*

" State of Missouri, } *ss.*
County of St. Louis, }

" Personally appeared before me, the undersigned, notary public for the county of St. Louis, and state aforesaid, duly commissioned and sworn, residing at the city of St. Louis, George F. Strother and B. G. Farrar, subscribing witnesses to the foregoing instrument, who severally acknowledged that the

said John Rice Jones signed his name to the above in their pre-sence, and further acknowledged the same to be his act and deed, for the uses and purposes therein expressed. In testimony whereof, I have hereunto set my hand and affixed my notarial seal, this 8th day of June, 1824.

" D. G. AUGLER, N. P. (SEAL.")

In the month of May, June or July, 1834, William P. Jones died intestate, leaving no issue, and defendant had been, since the conveyance of the said John Rice Jones, to the time of the death of the said William P. Jones, the agent of the said William P. Jones, in and about the premises in the Marine Settlement; and he had, of his own means, advanced large sums of money to the said William P. Jones, in his his life-time ; and after his death, had paid off, out of his own funds, several debts contracted by said William, in consideration whereof the other heirs of the said William P. Jones surrendered to defendant their claims to his estate, and the right of this defendant thereto was fully recognized by the other heirs, and he paid a full consideration to his brother, William P. Jones, for his interest in those sections.

Defendant, and his brother, William P. Jones, claimed, in fee, all of sections fourteen and twenty-three. The deed from John Rice Jones, of 31st January, 1824, to defendant and his brother, William P. Jones, was made in good faith, &c., and with the full conviction that he left more property clear than sufficient to meet all his liabilities; and that at the time of the execution of the deed, the estate of the said John Rice Jones was more than enough fully to pay all his just debts and legal liabilities, and in addition, to pay off any claim that the said Pierre Choteau could establish against his estate ; and defendant is informed that there is now in Missouri, in the hands of the administrator there, sufficient assets to pay all demands that can be established, without the sale of any lands in the state of Illinois. He never had notice of the suit on the bond made by John Rice Jones, as the administrator of Thomas Brady, or that John Rice Jones had ever administered upon his estate, or that Pierre Choteau had ever paid any money whatever, as the security of the said Jones, for any cause. Admits he was party to the action brought by Pierre Choteau against the estate of John Rice Jones, in Randolph Circuit Court; and while defendant was administrator, no claim was presented for settlement, against said estate, except

that of Pierre Choteau. Defendant has had no personal notice of the appointment of the said Harvey Clendinnin, as administrator of the estate of the said John Rice Jones, deceased, or of any sales made by him. Admits he did, on the 25th February, 1833, procure a tax title to sections fourteen and twenty-three; but denies that he committed fraud thereby, or that he doubted the title he had procured from his father, and wished the same strengthened, or feared the claim of the complainant, but, simply, because his tax agent advised him so to do, to cut off an older tax title that had been, or was about to be, procured by others. Admits he did, as charged in the bill, sell the portions of said sections fourteen and twenty-three. He now owns the south half of the south-east quarter of section fourteen, and the east half of section twenty-three, township four north, range seven west, in Madison county, and state of Illinois. Denies that he had any personal notice of the doings of H. Clendinnin, as the administrator *de bonis non* of the estate of John Rice Jones, deceased, although he might have been constructively notified of the fact.

B. C. Stanton, Mathew C. Garey, S. Carrollton, Jesse Bartlett, O. S. Balster, D. Ground and Thomas Ray, have also filed their separate and several answers, as follows, to wit: Mathew C. Garey, S. Carrollton, Jesse Bartlett and Thomas Ray, have severally pleaded that they are innocent purchasers, without notice, of portions of said lands, from said George W. Jones; and accompanied their respective pleas with answers generally denying all fraud, &c. B. C. Stanton, O. S. Balster and D. Ground, filed their separate answers, setting forth that they are, severally, innocent purchasers of portions of the land, without notice, from George W. Jones, and stating their ignorance of most of the main facts set forth in the bill. To these several pleas, answers, &c., the complainant filed a general replication.

The bill was taken for confessed against the other defendants, on their failure to file answers.

The case was taken to the Jersey Circuit Court, and, on the final hearing, all the important allegations of the bill, not admitted by the answers of the defendants or the agreements of counsel, were proved by certified copies of deeds, records and documents made part of the record in this case. It was also clearly shown by a certified copy of the records of the County Court of

Washington county, in the state of Missouri, containing the inventories, sale-bills and reports made by Myers F. Jones and Augustus Jones, the administrators of the estate of John Rice Jones, deceased, in that state, including the sale of lands, and of the proceedings in the administration, that the estate of said deceased there existing is insolvent, though the defendants attempted to prove otherwise by several witnesses, by their opinions, &c., to the contrary. The defendants named as the purchasers of parts of the lands from George W. Jones, proved their several purchases, as set forth in their respective answers; and Stanton and Ray proved their purchases of Garey, and Garey and Balster also proved their several purchases from Anderson, as set forth in their respective answers—and the payment of the purchase money—and that they severally paid fair prices for the lands. The value of certain lands in Randolph county, sold under the order of the Circuit Court, was also proved by the defendants.

Upon the hearing of the case, Lockwood, Justice, dismissed the bill, and ordered that each party pay his own costs; from which decision the complainant has appealed to this Court, and insists on a reversal of the decree in the Court below, and the entry of a decree in his favor on the case made by the bill, answers, exhibits, proofs and evidence embodied in the record.

DAVID J. BAKER, for appellant:

1. The decree, or license, for the sale of the lands in controversy, has been duly made by a Court having general and exclusive jurisdiction in the case; and the questions of fact, which the Court must necessarily have decided in making the decree, are *res judicatæ*, and cannot be again raised on the present occasion; and it was not competent for the Court to inquire whether or not there was property of John Rice Jones, deceased, in other states or countries, wherewith his debts might have been paid. As the Court has found that there was a deficiency of personal assets, and that a sale of these lands was necessary to pay the debts of the deceased, and as no fraud is shown on the part of Harvey Clendinnin, the administrator, either in obtaining the decree or in the making the sale under it, the necessity of ordering the sale cannot be inquired into in this case. The general principle is, that a judgment at law, or a decree in

chancery, is conclusive of all the facts which must necessarily have arisen in the controversy. 1 Johns. C. R., 543 ; 4 Scammon, 364; 3 Gilman, 626 ; 6 Wheaton, 109. The principle, that the judgment or decree of a Court possessing competent jurisdiction, shall be final as to the subject matter thereby determined, is conceded by all, and can admit of no doubt; the principle, however, extends farther: it is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have decided. Le Guen *vs.* Gouverneur & Kemble, 1 Johns. Cases, 436, and cases there cited. A surrogate order of sale in New York, of real estate for the payment of debts, cannot, ordinarily, be impeached collaterally, even for fraud. 20 Wend. R., 241. If G. W. and W. P. Jones were aggrieved by the order or decree, they should have taken an appeal. Statutes 1833; "Wills," &c., 104 ; 12 Wend., 533 ; Jackson *ex dem.* McFail *vs.* Crawford.

2. The purchasers of these lands, and the complainant, are strangers, and had no agency in obtaining the order of sale , and as no fraud is brought home to them, or notice of any, they cannot be injuriously affected by the condition of the estate of John Rice Jones, deceased : they were not bound to look beyond the order of sale by the Court. The principle is, that a purchaser of land, under a decree of Court granting a license to sell, is not bound to look beyond the decree. Grignon's Lessee *vs.* Aston, 2 How. U. S., 319; 5 Blackf., 328; 2 Peters, 169; 11 Mass., 227 ; Coleman *vs.* McKinney, 3 J. J. Marsh., 248; 7 Mass., 292 ; Leverett *vs.* Harris.

3. The deed from John Rice Jones to his sons, George W. Jones and William P. Jones, is a fraudulent conveyance, and therefore absolutely null and void, *ab initio,* as to pre-existing creditors. The principle laid down is, that a voluntary conveyance, when the grantor is indebted at the time of its execution, is fraudulent; and that all fraudulent conveyances are void as to those whom they were intended to defraud. 1 Fonb., B. 1, ch. 4, sec. 12; Story's Eq. Juris., secs. 352, 382 ; Revised Statutes 1833 ; Newland on Con., ch. 23, pp. 383, 387 ; 2 Kent, 440, and following ; 2 Black., 296, and note. A conveyance is fraudulent under the statute of 13 Eliz., ch. 5, where the same is voluntarily made, the grantor being indebted at the time it was

executed. A fraudulent intent will be presumed, from the fact that the party conveying was indebted at the time the conveyance was executed. Gilmore *vs.* N. Am. Land Co., Peters' C. C. R., 460; Sands *et al. vs.* Codwise *et al.*, 4 Johns., 536. Every conveyance not made on consideration valuable in law, is void as to pre-existing creditors. Sexton *vs.* Wheaton, 8 Wheat., 229; 1 Amer. Leading Cases, 52. A voluntary conveyance as to pre-existing creditors is, *per se*, fraudulent and void. Voluntary conveyances are void as to creditors; and in relation to pre-existing debts, neither the amount of the debts, the value of the property, nor the intention, is material; but the conveyance is fraudulent, *per se*. Hanson *vs.* Buckner, 4 Dana, 251; Miller *vs.* Thompson, 3 Porter, 198, 217. In the case of Read *vs.* Livingston, 3 Johns. C., 481, it was declared that the rule had no qualifications whatever; and that a voluntary conveyance is fraudulent in respect to existing debts, by presumption of law, without regard to the amount of the debts, the extent of settlement, or the circumstances of the party. See, also, Moore *vs.* Spence, 6 Jud. Ala., 506; Castillo *vs.* Thompson, 9 Jud. Ala., 937; O'Daniel *vs.* Crawford, 4 Devereaux, 197; Chapin *vs.* Pease, 10 Connecticut, 69; Parsons *vs.* McKnight, 8 N. H., 35; Gunn *vs.* Butler, 18 Pick., 248; How *vs.* Ward, 4 Greenleaf, 195; 1 Dana, 532. In all cases of fraudulent conveyances, as to pre-existing creditors, fraud is a question of law, and not of fact. Beers *vs.* Botsford, 11 Conn.; 369; Sherwood *vs.* Marwick, 5 Greenleaf, 295; Gardner Bank *vs.* Wheaton, 8 Greenleaf, 373. A gratuitous conveyance is always void as against creditors. Roberts on Fraudulent Conveyances, 450–1–2, and 591–596. The relation of debtor and creditor between Pierre Choteau and John Rice Jones commenced at the time of executing the administration bond, at least so as to entitle the former to contest the validity of the deed to the sons of the latter. 4 Greenleaf, 195, Howe *vs.* Ward; also Twyne's case, 2 Coke, 80.

4. An administrator, having obtained license from the proper Court, may sell lands fraudulently conveyed by the intestate during his life, and out of the proceeds pay the debts of his creditors. The principle as laid down is, that where a man indebted makes a voluntary conveyance to a child, without a consideration, and dies indebted, such conveyance is fraudulent,

and the lands conveyed shall be considered as part of his estate after his death, for the benefit of his creditors. Townshend *vs.* Windham, 2 Ves., 10. A fraudulent estate, created to defeat creditors, is as no estate in judgment of law. Jackson *vs.* Burgott, 10 Johns., 457, ( *per curiam,* ) and there cited Fermor's case, 2 Coke, 77, and Twyne's case, 2 Coke, 80. In the case of the Manhattan Co. *vs.* Osgood, reported 15 Johns., 162, Yates, J., said : " If lands were conveyed voluntarily, and without consideration, by the defendant, she being indebted at the time, it was illegal. If such conveyances are fraudulent and void, the fee remains in the defendant ; and as to her creditors, it was the same as though she had never conveyed," (and the case there cited.) A voluntary conveyance, by a grantor, who at the time of making it is insolvent, is void as respects creditors ; and the land, after the death of the grantor, is assets by descent or devise, in the hands of his heirs, or the devisees of the residuum of his estate. Ibid. In the case of Drinkwater *vs.* Drinkwater, 4 Mass., 354, Parsons, J., delivered the opinion of the Court : " That when the estate is not insolvent, a creditor may have the benefit of the estate fraudulently conveyed, in two ways : he may recover judgment against the administrator, and may extend his execution on the estate ; or, the administrator having obtained license, may sell the estate at public auction, and out of the proceeds may satisfy the creditors. If the lands are liable to the payment of the intestate's debts, the administrator may lawfully sell them on license, whether they are in the possession of the heirs, or if his alienee or disseizor ; for no seizin of the heir, or of the alienee, or of his disseizor, can defeat the naked authority of the administrator to sell on license."

In Connecticut, the Courts have determined, " that property fraudulently conveyed, is assets, which the administrator is bound to inventory, if he knows of it, and is entitled to recover." Minor *vs.* Mead, 3 Conn., 289 ; Booth *vs.* Patrick, 8 Conn., 106 ; 11 Conn., 283. An administrator cannot sell real estate for the payment of debts, unless the intestate died siezed of it, or had fraudulently conveyed it away, or was colorably and fraudulently disseized of it. Willard *vs.* Nason, 5 Mass., 240 ; Drinkwater *vs.* Drinkwater, 4 Mass., 354. An executor or administrator has no interest in the real estate of the deceased ; he cannot intermeddle therewith ; he cannot maintain an action

to recover possession or seizin of real estate; nor can he defend in a real action. A recovery in a real action cannot prejudice the creditors; his right to sell on license remains the same after as before the recovery. Drinkwater *vs.* Drinkwater, 4 Mass., 354; Henshaw *vs.* Blood, 1 Mass., 35; Gibson *vs.* Farley, 16 Mass., 280; Stearns *vs.* Stearns, 1 Pickering, 157; Bridgewater Co. *vs.* Bookfield, 3 Cowen, 299; Dean *vs.* Dean, 3 Mass., 258; also, 5 Mass., 240. An administrator is a trustee to creditors, and may avoid a fraudulent conveyance, for the benefit of such creditors. Thompson *vs.* Palmer, 2 Richardson's Eq., 32; Neal *vs.* Haythrop, 3 Bland, 551; Gibbons *vs.* Peeler, 8 Pick., 254; Holland *vs.* Cruft, 20 Pick., 321; White *vs.* Brown, 2 Car. Law Rep., 449; Boston Bank *vs.* Minot, 3 Met., 507. In Pennsylvania, it is settled, that the administrator of an insolvent's estate may set aside a fraudulent conveyance, as he is in such a case a trustee for creditors. Buchler *vs.* Gloninger, 2 Watts, 226; Stewart *vs.* Kearney, 6 Watts, 453; Welsh *vs.* Bekey, 1 Pennsylvania, 57; Englebert *vs.* Blanjot, 2 Wharton, 240. The same principle is now held by the Courts in New York. Babcock *vs.* Booth, 2 Hill, 182; Brownell *vs.* Curtis, 10 Paige, 210. The administrator is the representative of the creditors, &c., 11 Conn., 288. He is trustee for the creditors, 12 Wend., 543; 3 Bac. Ab., "Fraud. Con." There is no privity between an administrator and an heir or devisee. 1 Munf., 446; 2 Peters, 523. Property of a debtor, which might be levied on and sold under execution, may be sold on license or order granted to his executor or administrator. 5 Ohio R., 71, Brice *vs.* Myers *et al.* The voluntary donee may be charged as executor *de son tort*, if he take possession of the goods after the decease of the donor. Rob. on Fraud. Con., 593–4–5, and cases there referred to. When he takes possession after grant of administration or probate, the rightful administrator or executor may sue for the goods, or they may be treated as assets in his hands. 1 Ves., Peacock *vs.* Monk. One of the badges, evidence of the fraud in the conveyance, is mentioned, its being executed by the grantor on the same day with his will. "A deed, with a consideration merely nominal, will, as it respects creditors, be treated as voluntary." 4 Wash. C. C. R., 133, Ridgeway *vs.* Underwood; see Gooch's case, 3 Coke, part 4, p. 60: "For fraud and covin, because they are odious, are so

40

privately and secretly hatched in a hollow tree, *in arbore cava et opaca,* and so artificially covered and concealed, that the party grieved has no means to find or know it," &c.

5. The deed of conveyance from John Rice Jones to George W. Jones and William P. Jones, is void as to the lands in Madison county, because of the uncertainty in the description; which is, "two entire sections of land, lying and situate in the Marine Settlement, and state of Illinois."

6. The purchasers from George W. Jones are not innocent purchasers without notice. The law fastens notice upon them, and adjudges them to be cognizant of the character of the title of their grantor. They are presumed to have known that the lands given by John Rice Jones, at his death, to his sons, were subject to the payment of his debts. The general rule is, that whatever is sufficient to put the party upon inquiry, is good notice. Where a party has knowledge of the facts, he has notice of the legal consequence resulting from those facts. The Ploughboy, 1 Gallis. C. C. R., 41; Pratt *vs.* St. Clair's Heirs, 6 Ohio Rep., 93; 2 Sugden on Vendors, 335, 336, ch. 17. No principle is better established, than that a purchaser must look to every part of the title which is essential to its validity. Brush *vs.* Ware, 15 Peters, U. S., 93. When a purchaser cannot make out his title but through a deed which leads to a fact, he will be affected with notice of that fact. Mertins *vs.* Joliffe, Amb., 311. In all cases where a purchaser cannot make out a title but by a deed which leads to another fact, he shall be deemed cognizant of that fact. Dunch *vs.* Bennet, 2 Ch. Cas., 246; 1 Story Eq. Juris., ch. 7, sec. 399; 2 Fonb. Eq., B. 2, ch. 6, sec. 3, and note *m.* That which shall be sufficient to put the party upon inquiry, is notice. 13 Ves., 120. Also, see Dunch *vs.* Kent, 1 Vern., 319.

The law requires reasonable diligence in a purchaser to ascertain any defect of title. But when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. He is a voluntary purchaser; and having notice of a fact which casts a doubt on the validity of his title, the rights of innocent persons are not to be prejudiced through his negligence. Brush *vs.* Ware, 15 Peters, U. S., 93; Jackson *vs.* Livingston, 10 Johns., 374; Willis *vs.* Bucher, 2 Binn., 455; see 1 Hoffman's Ch. Rep., 153. *Lis pendens* is notice to a purchaser. 1 Story

Eq. Juris., chap. 7, sec. 405; 2 Sug. on Vendors, chap. 17, sec. 3. Every man shall be presumed to have notice of a decree whereby his own title is affected. Fonbl. Eq., B. 3, ch. 3, sec. 1, note *b.*, *et seq.*; 1 Story Eq. Juris., sec. 406. A deed fraudulent on the part of the grantor may be avoided, though the grantee be a *bona fide* purchaser, and ignorant of the fraud. 2 Johns. Ch. R., 41, 42, *et seq.* A purchaser without notice from a voluntary grantee, is not protected. 2 Fonbl. Eq., 212, *n.* "The statute 13 Eliz. was made to protect creditors from fraudulent conveyances; and the original deed being utterly void as to them, the grantee can make no valid conveyance, for, so far, he has no title." The proviso in the act applies only to the original deed, and saves it when made to a *bona fide* purchaser, for a valuable consideration, however fraudulent the intention of the grantor. But such *bona fide* conveyance by the fraudulent grantee, is not so protected; and the policy of the act would be defeated by such extension, &c. If the debtor himself sells fairly, he acquires means to discharge his debts, and it may be presumed he will so apply them. If his fraudulent grantee be enabled to sell, the grantor cannot call those proceeds out of his hands, and the grantee can either appropriate them to his own use, or to any such trust upon which the conveyance may have been made.

7. The fact that the deeds of conveyance for the lands in controversy, from Harvey Clendinnin, the administrator of John Rice Jones, deceased, to Pierre Menard, jr., and to the complainant, were not recorded in Madison county before those from G. W. Jones to certain of the defendants, is not material, because: The claimant does not derive title from G. W. Jones, or any one claiming under him. Lessee of Sicard *vs.* Davis *et al.*, 6 Peters, 124; Rev. Statutes 1833, sec. 5. The recording acts apply only to such as have obtained a subsequent deed from the same person who executed the prior one. Rev. Laws of 1833, page 587, sec. 5. Where an executor sold and conveyed by deed testator's land, by a power derived from the testator's will, and afterwards the heir entered, and sold by deed the same land, without notice of the executor's sale and conveyance, it was adjudged that the last conveyance was void, as the heir never had any estate which he could dispose of, and that the registry of the deed was immaterial. 1 U. S. Dig. Supp., 800, sec.

221; Herbemont vs. Bostick, 2 Brevard, 435. George W. Jones had no title to convey away, as against the creditors of John Rice Jones, deceased, or as against the purchasers under the order of the Circuit Court, at the sale made by his administrator. The recording act applies only to the purchasers of the title, asserted by virtue of the conveyance, and to creditors of the party who made it. The same general terms are applied to creditors; and to purchasers and surety the word creditors can mean only creditors of the vendor. *Dicit* Marshall, 6 Peters, 139.

8. The purchase of the lands by George W. Jones, at the sale made by the Auditor of state, January 19, 1833, on account of the non-payment of the taxes assessed for 1832, did not change or strengthen his title. He held by the same title after as before such purchase. Douglass vs. Dangerfield, 10 Ohio Rep., 152; Pratt vs. St. Clair's Heirs, 6 Ohio, 93; Stiver vs. Stiver's Heirs, 8 Ohio, 217; 4 Johns. Rep., 565, Sands et al. vs. Codwise et al.

9. The Court of Chancery will entertain jurisdiction of a case where it is sought to set aside a deed, or have cancelled a deed or instrument that may throw a cloud or suspicion over the title or interest of the complainant. 2 Story Eq. Juris., secs. 694–5–6–8, 700–702; 2 Blackf., 295, Freakes vs. Brown. A purchaser at sheriff's sale is not a subsequent purchaser, under 27 Eliz., and on that ground entitled to question a prior voluntary conveyance, but as a creditor under 13 Eliz., and stands in the place of the creditor upon whose judgment the land was sold. Lessee of Ridgeway vs. Underwood, 4 Wash. C. C. R., 129. A purchaser under a judgment creditor is entitled to the benefit of the statute of frauds. 2 Johns. Ch. R., 50, Hildreth vs. Sands. When the statute gives the principal remedy, it gives the incident remedy. "A purchaser at a sheriff's sale under the judgment of a creditor, is entitled to the benefit of the statute of frauds, equally as the creditor himself, and may support a bill to set aside a previous fraudulent conveyance." 14 Johns. R., 493, Sands vs. Hildreth. In the case of Roberts vs. Anderson, 3 Johns. Ch. R., 377–8–9, this doctrine is fully considered and recognized as the established and unquestionable construction of the 13 Eliz.

Wm. Martin, with whom was Seth T. Sawyer, for appellees:

A purchaser for a valuable consideration, from a voluntary grantee, will hold as against a grantee from the first grantee, for a full consideration. 3 Johns. C. R., 377–8; 18 Johns. R., 515 and 543. To set aside a deed for fraud against creditors, the bill must allege fraud and insolvency, and a want of other property with which to pay the creditor. Which fact must be admitted or proved. The voluntary deed from John Rice Jones to his sons, was good as a voluntary deed. 6 Cond. U. S. R., 270; 5 Wend., 588. The grantor must be insolvent when the voluntary deed was made, and to impeach it, fraud must be charged and proved. 6 Paige's C. R., 62 and 526; 4 Wendell, 300; 7 ibid, 437; 1 Pet. Digest, 369, sec. 91; ibid, 82, sec. 53; 2 Pet. Digest, 367, secs. 71, 72.

An administrator cannot take an order to sell land which had been fraudulently or voluntarily conveyed away by the intestate. 7 Johns., 160; 1 Brockenbrough, 500; Yelverton, 196; 1 Salkeld, 318; 1 and 2 Vermont, 333; 4 Blackford, 141 to 145; 6 Harris and Johnson, 61. To subject land voluntarily conveyed to the payment of the debts of creditors, a bill should be filed, praying that the heirs or grantees should pay the creditors the value of the lands conveyed, or that the land shall be sold for that purpose. 2 Brockenbrough, 132–3; 5 Ohio, 79; 1 Barber and Harrington's Digest, 343, sec. 26.

This bill, which is a bill by a purchaser, under the administrator, to set aside a voluntary deed, and not to subject the lands to the payment of debts, cannot, on the above principles, be sustained.

Opinion by TREAT, C. J.:

We are not prepared to decide that the deed from John Rice Jones to George W. Jones and William P. Jones, was void, as respects the premises in question, because of uncertainty in the description. There are references in the deed by which the lands can be ascertained and distinguished. It is stated in the conclusion of the description that the lands are " all situated in the state of Illinois, and patented to the said John Rice Jones." These words must be understood as applying to all of the lands intended to be conveyed. If so, the description, unconnected with the other lands included in the deed, reads, " two entire sections of land, lying and situate in the Marine Settlement, and

state of Illinois, and patented to the said John Rice Jones."
This description points directly to the evidence by which the
two sections can be located. It is not pretended but that the
Marine Settlement was a locality well known when the deed
was executed, and that the lands in dispute were situated within
its limits. By an examination of the proper records, it could be
ascertained what lands in that settlement were patented to the
grantor. If but two entire sections were there entered by him,
the precise locality and description of the lands designed to be
granted would be rendered definite and certain. If no lands
were entered by him in the settlement, or, if any, more than two
full sections, it might be that the grant, as to the two sections of
land, would be void, because no locality could be given them
consistent with the description and references contained in the
deed. There is no allegation in the bill that these particular
sections were not patented to the grantor, nor any allegation
denying an intention on his part to convey them. On the con-
trary, the bill distinctly states that they were patented to him.
The complainant makes no case requiring the defendants to
prove that these sections were designed to be embraced by the
grant. The deed must be considered as including the lands in
controversy.

But the deed, as clearly appears on its face, was a voluntary
conveyance. Although valid between the parties, it was fraud-
ulent and void as against pre-existing creditors of the grantor.
Pierre Choteau was such a creditor, within the true intent and
meaning of the statute. The liability which resulted in the
judgment against him, as the security of the grantor, was incur-
red several years before the execution of the deed. The rela-
tion of debtor and creditor between principal and surety, so as
to entitle the latter to avoid a voluntary conveyance made by
the former, commences at the date of the obligation by which
the surety becomes bound, and not from the time he makes pay-
ment. Howe *vs.* Ward, 4 Greenleaf, 195; Thompson *vs.*
Thompson, 19 Maine, 244; Carlisle *vs.* Rich, 8 New Hamp-
shire, 44. The surety had an undoubted right, on recovering a
judgment against the administrator, which the personal estate
to be found in this state was insufficient to pay, to proceed in
equity to set aside the conveyance, and subject the lands to the
payment of the judgment. McDowell *vs.* Cochran, *ante*, 31.

It is contended that an administrator may, for the benefit of creditors, impeach a voluntary conveyance made by his intestate. We are satisfied that this position cannot be sustained. An administrator is authorized by statute, after he has exhausted the personal estate in the payment of debts, to apply to the Circuit Court, and obtain leave to sell so much of the real estate of which the intestate " died siezed," as will be sufficient to discharge the residue of the debts. John Rice Jones did not die siezed of the premises in question. The title had forever passed out of him. The deed was binding upon all the world but creditors, and subsequent bona fide purchasers. They alone could defeat the estate of the grantees. The deed was good against the heirs and personal representatives of the grantor. The former could take no greater estate than their ancestor had ; the latter could assert no greater right than his intestate might have done. An administrator is not the agent or trustee of creditors, for the purpose of avoiding a fraudulent conveyance. He is the representative of the intestate, and succeeds to his rights and interests. He stands in his place, and is bound by his acts. Whatever was binding on the intestate is binding on his administrator. He is clothed with no greater power than the intestate possessed. He can no more call in question a voluntary deed than could the intestate himself. His powers, in the absence of statutory regulation, are confined to the personal estate. His authority to sell the real estate is derived from statute, and that restricts him to real estate of which the intestate was siezed at the time of his death ; in other words, to such real estate as the intestate, while in life, had the right to alien and convey. The following cases are direct to the point, that an administrator cannot take advantage of a fraudulent conveyance made by his intestate: Hawes vs. Leader, Yelverton, 196 ; Osborne vs. Moss, 7 Johnson, 161 ; Dorsey vs. Smithson, 6 Harris and Johnson, 61 ; Lassiter vs. Cole, 8 Humphrey, 621 ; Commonwealth vs. Richardson, 8 B. Monroe, 81 ; Peaslee vs. Barney, 1 D. Chipman, 331 ; Bank vs. Burke, 4 Blackford, 141. The decisions in Massachusetts, to the effect that an administrator may, as trustee of creditors, obtain license to sell real estate fraudulently conveyed by his intestate, are founded on a statute expressly declaring that real estate, thus conveyed, shall be liable for the payment of the debts of the grantor, and

may be recovered and applied in the same manner as the lands of which he died siezed, in case the personal estate is not sufficient to discharge the debts. See the statutes of Massachusetts for 1805, ch. 90, sec. 5; and Martin *vs.* Root, 17 Mass., 222. The cases of Babcock *vs.* Booth, 2 Hill, 181, and Brownell *vs.* Curtis, 10 Paige, 210, are also founded on special provisions of statute. These decisions all show that, independent of the peculiar statutes on which they are based, an administrator possesses no power to avoid the voluntary deed of his intestate. The Courts in Connecticut decide that an administrator has the power, but the weight of authority is decidedly the other way.

But these general remarks, respecting the powers of an administrator, must be understood as applicable to the case of a direct proceeding or attempt on his part to set aside a fraudulent conveyance, and not to cases where creditors and purchasers have a right to conclude that the intestate died siezed of the premises, which the administrator has been licensed to sell. In this case, it does not follow that the purchasers at the sale by the administrator, acquired no title as against the grantees of John Rice Jones. This is not a contest between the administrator and those grantees, in which the former is attempting to avoid the voluntary conveyance, and subject the lands to the payment of the debts of the grantor. The deed was not so acknowledged or proved as to be entitled to be recorded. By the act of the 19th of February, 1819, conveyances executed in another state, of lands situated in this state, were required to be acknowledged by the grantor, or proved by one of the subscribing witnesses, before a Judge of a superior Court, a mayor or chief magistrate of a city, or clerk of a county Court, and certified under the common seal of the city or county, and recorded within twelve months after the execution thereof. The act of the 30th of December, 1822, authorized conveyances made in another state, and acknowledged or proved in conformity to the laws of such state, to be admitted to record in this state. This deed was not acknowledged or proved according to the provisions of the law of 1819. That act conferred no authority on a notary public to take and certify the acknowledgment or proof. But if the notary had the authority, his certificate was clearly defective. He did not certify that the execution

of the deed was *proved* by the oaths of the subscribing witnesses; but merely stated that the subscribing witnesses appeared before him, and *acknowledged* that the grantor executed the deed in their presence. Nor is there any evidence in the case to show that the execution of the deed was proved in pursuance of the laws of Missouri, so as to entitle it to be recorded under the act of 1822. The deed, then, was not properly admitted to record. The registration of an unacknowledged deed gives it no additional validity or effect. It is not even implied notice of the existence of the deed. The grantees, therefore, failed to comply with the requisitions of the registry laws, so as to give the administrator, creditors and purchasers notice of the grant to them. The personal estate of the grantor was not sufficient to discharge the claims established against the administrator; and the title papers of the intestate and the public records showed that he died seized of the lands in question. In this state of case, the administrator made application to the Circuit Court for an order to sell the premises. The grantees were heirs of the intestate, and, as such, had notice of and were parties to the proceeding. They failed to appear and disclose or assert any claim to the lands. Creditors and purchasers had the right to conclude, and to act on the conclusion, that the lands belonged to John Rice Jones at the time of his death; and that George W. Jones and William P. Jones had no other interest therein than as heirs at law of their father. Under all of these circumstances, it would be grossly inequitable to allow them now to set up the voluntary deed against purchasers, who paid a full consideration for the lands, without any notice, actual or constructive, of the prior grant. If the complainant had purchased the premises from the grantor, for a valuable consideration, and without notice of the voluntary grant; or, if subsequent to the death of the grantor, he had, in like manner, purchased from his heirs, there could not be a question but he would hold the lands as against the voluntary grantees. And this case, in principle, is not distinguishable from those. The sale is not sustained on the ground that an administrator may avoid a fraudulent grant, but for the protection of honest creditors and *bona fide* purchasers. Their rights ought to be regarded as more sacred than those of grantees who paid nothing for the lands, and who failed to register their title until purchasers had paid

41

the consideration money, and the judgment of the creditor had been satisfied. The purchasers at the sale of the administrator succeeded to all of the rights of the creditor, in fraud of whom the conveyance was made; and they are entitled to the benefit of the statute of frauds equally as the creditor himself. Hildreth *vs.* Sands, 2 Johnson's C. R., 36; Ridgeway *vs.* Underwood, 4 Washington's C. C. R., 129; Sands *vs.* Hildreth, 14 Johnson, 493.

The purchase of a portion of the land by George W. Jones, at a sale for taxes, did not strengthen his title. That purchase was made prior to the sale by the administrator. He was then one of the owners of the land, and, as such, bound to pay the taxes assessed upon it. The purchase was but a mode of paying the taxes legally chargeable against him. He admits in his answer that he suffered the land to be sold, and bid it in for the purpose of defeating an older tax title, and not with a view of acquiring any new title. A purchaser at a tax sale of land, in which he has an interest as heir, acquires no additional title. Piatt *vs.* St. Clair's Heirs, 6 Ohio, 93. A party, who claims title to land which is listed for taxation in his name, acquires no greater interest by permitting it to be sold for taxes and purchasing it himself. Douglass *vs.* Dangerfield, 10 Ohio, 152.

In our opinion, the complainant has a clear right to the relief claimed, as against the grantees of John Rice Jones. But omitting to put on record in due time the conveyance from the administrator, he cannot assert title against the grantees of George W. Jones, to the extent of the interest he apparently had in the lands. It is now the settled doctrine in this country, that a *bona fide* purchaser, for a valuable consideration, and without notice, either from a fraudulent grantor or grantee, shall be protected. He takes the estate discharged of the fraud that previously infected the title. 4 Kent, 464; Bean *vs.* Smith, 2 Mason, 252; Anderson *vs.* Roberts, 18 Johnson, 515; Oriental Bank *vs.* Hoskins, 3 Metcalfe, 332. The act of the 21st of July, 1837, provided that deeds, recorded in the proper county, should be deemed and taken to be notice to subsequent purchasers and creditors, whether the same were acknowledged or proved according to the laws of the state or not; and a proviso declared the provision applicable to deeds theretofore admitted to record. The registration of the deed from John Rice Jones

became operative for the purposes of notice from the passage of that act. It is not questioned but that the grantees of George W. Jones were purchasers for valuable consideration. It is true, the deed from John Rice Jones appeared on its face to be a voluntary conveyance; and these purchasers were chargeable with knowledge of the law, that such a deed might be avoided by pre-existing creditors of the grantor, or subsequent *bona fide* purchasers from him. But all of them, except Anderson, purchased more than thirteen years subsequent to the execution of the voluntary deed, and the death of the grantor, and several years after the sale and conveyance by the administrator, pursuant to a license granted in another county; and Anderson purchased subsequent to the sale of the administrator, and more than eleven years after the execution of the fraudulent conveyance. And all of their purchases were made and their conveyances recorded before the registry of the administrator's deeds. They had a clear right to conclude from this length of time and the state of the records, that there were no antecedent creditors of John Rice Jones, and no subsequent purchasers from him or his administrator. They cannot be charged with notice of the application by the administrator for leave to sell the lands, for that proceeding was had in another county, and before they claimed any interest in the land. The conveyances from the administrator should have been recorded in Madison county, in order to protect the purchasers from him against the alienations of the voluntary grantees. The act of the 18th of January, 1833, in force when all of the conveyances were made but the one from John Rice Jones, declared that "all deeds and title papers, of whatever description, for lands lying in this state, whether owned by residents or non-residents, shall be recorded in the county where the lands are situated;" and "shall take effect and be in force from and after the time of filing the same for record, as to all creditors snd subsequent purchasers, without notice, and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record in the county where the said lands may lie." Administrator's deeds would seem to be clearly within the letter of this statute. They are certainly within the reason and spirit of its provisions. An order may be obtained, in the county where administration is

granted, for the sale of the lands of an intestate, situated in any part of the state. If this class of conveyances is not required to be recorded, a purchaser from heirs, at any distance of time after the death of the intestate, has no security that his title may not be defeated by the production of an administrator's deed, founded on an order of sale granted in a remote county. In the county where the order of sale is made, there would not seem to be the same necessity for the deed to be registered; and the record of the proceedings might, perhaps, there be held to be notice to a purchaser. Upon this point, however, we must be understood as expressing no opinion.

As to this branch of the case, it is a contest between a purchaser succeeding to the rights of the creditors of the fraudulent grantor, and *bona fide* purchasers from the fraudulent grantee. They are all equally meritorious and innocent, but the law in such case wisely favors the most vigilant. The one who first places his title on record must prevail.

George W. Jones, by virtue of the voluntary deed, became seized of an undivided half of the lands; and, on the death of his brother, without issue, he took, as one of his heirs at law, one-seventh part of the other moiety. The purchasers from him are therefore entitled to hold *nine-fourteenths* of the lands embraced in their deeds.

The result of our opinion is, that the complainant is entitled to a decree setting aside the voluntary deed as to the whole of the lands not aliened by George W. Jones, and as to *five-fourteenths* of the part conveyed.

The decree of the Circuit Court will be reversed, and a decree entered in this Court conformable to this opinion; the costs made by the purchasers from George W. Jones to be taxed against them, and the balance to be divided equally between the complainant and said Jones.

*Decree reversed.*