1818.

VAN BERGEN
v.
VAN BERGEN.

A. VAN BERGEN *against* H. VAN BERGEN.

*November* 11, and 12, 1817, and *January* 8. A Court of Chancery does not interfere to prevent or remove a private nuisance, unless it has been erected to the annoyance of the right of another, long previously enjoyed. It must be a case of strong and imperious necessity, or the right previously established at law, before the party is entitled to the aid of this court

Though a person has a right to erect a mill where he pleases on his own ground, yet he must so exercise that right as not to interfere with the existing rights of others. If *A.* erects a new mill, in such a place, or so near the mill of *B.* that an artificial dam, before erected by *B.* causes the water to flow back on *A's* mill and obstruct its movement, it seems that *A.* has no right to complain of the dam of *B.* as a nuisance.

BILL filed, *December* 5th, 1816. It stated that the plaintiff being seized as tenant in common, with the defendant, of about six acres and a half of land, and two certain falls of water and mill seats, including the ground requisite for the erection and convenience of mills, together with a grist mill erected on the easternmost, or lower mill-seat, on the north side of the *Coxsackie Creek*, and the privilege of erecting mills, raceways and dams, on and across the said creek, and using the water for such purposes, he on the 8th of *December*, 1808, entered into an agreement with the defendant, for a partition of the premises; and they, accordingly, divided the same into two parts, and the westernmost half of the six and a half acres, together with the upper fall and mill seat, were set off and released to the plaintiff, and the easternmost half, together with the lower fall and mill seat, and the grist mill erected thereon, to the defendant. That the part of the defendant being of greater value than the part of the plaintiff, the defendant, in consideration thereof, agreed to convey to him 31 acres of land in the *Coxsackie patent*.

That, in 1809, the plaintiff erected a saw mill and dam, on the creek, within his premises, and that by reason of

its overflowing the lands of *P. R. Vandenbergh* and others, he was sued at law, and a verdict recovered against him for 120 dollars. (*a*) That the plaintiff, afterwards, removed and rebuilt his mill and mill dam, twenty-two feet lower down on the creek, within his premises. That the defendant, in the summer of 1816, erected a dam three feet and a half high, on the upper part of the fall contiguous to his mill, by means of which he has caused the water to flow back and obstruct the operation of the plaintiff's mill. That the fall of the defendant's mill is twenty feet high, formed of rocks, and the depth of water, at and just above the fall, in a dry season, is not less than 10 or 14 feet, and the defendant can have a full supply of water for his mill, without such a dam as he has erected, and without obstructing the plaintiff's mill. That the defendant had notice of the plaintiff's intention to remove his mill and dam, when the defendant erected the said dam. That the plaintiff gave notice to the defendant of the obstruction to the plaintiff's mill occasioned by the defendant's dam, and requested him to remove it, which he has refused to do. That the injury occasioned to the plaintiff, by the defendant's dam, is permanent, and precludes all hope of any adequate reparation at law, and must lead to numerous law suits. That the erection of the said dam by the defendant, is contrary to the intent and meaning of the said releases in partition ; that it impedes the use of the plaintiff's mill, and the defendant has an abundant supply of water, at all seasons, without any such dam, or obstructing the plaintiff.

Prayer, that the defendant may be required, within a reasonable time, to remove his said dam, and not obstruct the operation of the plaintiff's mill, by any erections below, by throwing back the water, &c.

The deed of the defendant to the plaintiff released to him the land, " together with the fall of water in the said creek, and the privilege of the same, and the free use of

1818.

VAN BERGEN
v.
VAN BERGEN.

(*a*) Vide 13 *Johns. Rep.* 212.

any mill or mills, which may, hereafter, be erected in, or upon the said creek and fall of water, so that the parties of the first part (defendant and wife,) shall not so raise the mill dam now erected below the said falls, as to make the back water impede any mill which may be erected as aforesaid by the plaintiff."

The answer of the defendant, filed the 1st of *March*, 1817, stated, that he was tenant in common with the father of the plaintiff, of the premises described in the bill, and in 1804, agreed with him to divide them, in the manner described, and under that agreement the parties entered into possession of their respective parts in severalty; that on the 8th of *December*, 1808, to confirm that agreement, and carry it into effect, the plaintiff and defendant executed releases to each other for their respective parts. That the *grist-mill* mentioned, was erected twenty-years ago, by the defendant and the plaintiff's father, and they, at the same time, erected a dam on the top of the fall where the dam is now erected, of the height of above four feet, which continued until 1810, when it was carried away by a freshet. That at the time the releases were executed, the dam on the top of the lower fall, was, at least, three feet, and the dam and mill-pond were, as they had been a long time before, used as appertaining to the mill. That when the plaintiff, in 1809, erected the saw-mill and dam mentioned in his bill, the dam on the top of the fall erected by the defendant and the plaintiff's father, was remaining of the same height, as before mentioned, and the water then caused to flow back and form a pond to the foot of the upper fall, and upon part of the bed of the river released to the plaintiff's father. That when the dam of the defendant was carried away by the freshet, one *A. Van Allen* was tenant of the mill, &c., and without the consent of the defendant, erected another dam resting upon the first step of the fall, one foot lower down the creek than the former dam, and raised about two feet above the level

of the top of the fall; and the water, by that means, form- ed a pond on part of the bed of the creek included in the premises of the plaintiff. That this last dam was carried away, and the defendant, in the autumn of 1816, erected another dam on the top of the fall, where the dam built by him and the plaintiff's father originally stood. That the last dam does not raise the water more than twelve inches above the top of the fall, and is two feet lower than the dam erected before, and which stood there when the partition was made. That when the defendant erected the last dam, he had no notice of the intention of the plaintiff to remove his saw mill and dam lower down; that when the defendant was building the last mentioned dam, the plaintiff was informed of it, and shown how high it was to be built, and approved of it.

The defendant admitted, that, by means of the last mentioned dam erected by him, the water flows back upon the wheel of the plaintiff's newly erected saw mill, and wholly impedes its operation. That the fall of the defendant is about 20 feet high, formed of rocks, making a natural dam of such a height as to form a bason of water of considerable depth, a few rods west of the top of the fall, and in some places to the depth of 10 feet, &c.

The defendant denied that he had, at all seasons, an abundance of water, without an artificial dam, or without obstructing the operation of the plaintiff's mill. That to obtain the necessary supply of water for his mill, at any season of the year, an artificial dam is requisite, above the top of the fall; and that without such a dam of three feet above the top of the fall, the defendant would not have a sufficient supply of water to his mill, for more than four months in the year. That the pond covers only one-third of an acre; and the plaintiff's mill stands so far down the fall, that it would be prevented from going, by the back water of the pond, formed by the natural dam of the rock, without any artificial dam. That the plaintiff's

1818.    saw mill is at the foot of the fall, and the water wheel let
into the pond, formed by the natural dam.   That the
VAN BERGEN plaintiff insists that he has a right to set his mill where he
*v.*
VAN BERGEN. pleases on his own land, and that the defendant, by the
deed of release, is bound to remove all obstructions.
That if any of the covenants in the deed have been broken,
the plaintiff has adequate remedy at law.

The deed of the defendant to the plaintiff, dated *Decem-
ber 8, 1808,* releases " the grist mill, and the land thereby
covered, and appertaining, as fully and amply, as the said
mill, with its appurtenances, is now actually possessed by
the defendant, by his tenant, *Thomas Palmerter,* and also
the water, mill dam, and ground, thereby covered, with
all, and singular, the rights, privileges, &c. and appur-
tenances to the said mill belonging."   The deed, then,
conveys three acres and a quarter, by metes and bounds,
and adds, " togther with the use of the water of the said
creek ; and, in case any mill or dam should hereafter be
erected by the plaintiff above the mill hereby released to
the defendant, the defendant shall have the privilege of
letting the water out of such dam for the use of his mill
below, and hereby released, provided no injury shall be
done to the mill or dam, so to be erected.   And it shall
not be lawful for the plaintiff to withhold the water unne-
cessarily from the mill of the defendant."

The cause was heard in *November* last.

*Van Vechten,* for the plaintiff.

*Van Buren,* (Attorney General,) and *Van Dyck,* for the
defendant.

*January 8*    The cause stood over for consideration to this day.

THE CHANCELLOR. There are two objections to the plaintiff's title to a decree, and both of them appear to be well founded.

1. The remedy of the plaintiff (if any) ought to be sought at law, by an action on the case, or by an action upon the covenants contained in his deed of *December*, 1808. The cases in which chancery has interfered by injunction, to prevent or remove a private nuisance, are those in which the nuisance has been erected to the prejudice or annoyance of a right which the other party had long *previously* enjoyed. It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call to his aid the jurisdiction of this court. In *Brown's* case, (2 *Vesey*, 414.) Lord *Hardwicke* intimated that the title must have been established at law, or the party have been in the previous enjoyment of the subject, for at least three years, before he would interpose by injunction in the case of a private nuisance. In the case of *The Attorney General* v. *Nichol*, (16 *Vesey*, 338.) Lord *Eldon* said, there were private nuisances which would support an action on the case, but which would not support an injunction. He put the jurisdiction of the court upon the ground of material injury, and of that special and troublesome mischief which required a preventive remedy, as well as a compensation in damages. I have had occasion frequently, since I have been sitting in this court, to allude to this very doctrine, and to consider it as sound. (*Gardner* v. *Village of Newburgh*, 2 *Johns. Ch. Rep.* 164, 165. *Attorney General* v. *Utica Insurance Company, id.* 379.)

When a statute authorizes commissioners or others to interfere with private property, and it is charged and shown that they are about to exceed their powers, the case seems not to be governed by the ordinary rule; the interference of the court is more prompt, and is called for by

greater necessity. (*Belknap* v. *Belknap*, 2 *Johns. Ch. Rep.* 463.)

In this case the plaintiff erected his mill after the defendant had erected his dam. It is like the case of a person building his house against an ancient wall, and then complaining that his windows are darkened. Whether the defendant had a remedy at law, prior to the erection of his present mill, for the overflowing of his land, by the means of the dam in question, it is not for me to say. But, perhaps, he might have tested the legality of the dam, in that way, or after he had erected his mill, he might, by an action on the covenant in his deed, have tried the question. It is a proper legal question, and the plaintiff had his legal remedy. It does not strike me that he has shown that species of nuisance required by the cases, to entitle him to call to his assistance the power of this court.

But if the merits of the case were properly before me, I should consider the plaintiff as having failed.

When the parties executed their mutual releases, in *December*, 1808, there was an artificial dam on the spot where the present dam stands, still higher than the present dam. Of this fact the proof is abundant. There has been an artificial dam there for upwards of 20 years, and always higher than the present dam. The mill belonging to the defendant, and to which this dam is auxiliary and necessary, is also of long standing. All this was known to the parties when they released to each other; yet the plaintiff releases "*the grist mill, and the land thereby covered, and appertaining, as fully and amply as the said mill with its appurtenances, is now actually possessed by the defendant, by his tenant, and also the water, mill dam, and ground thereby covered, with all and singular the rights, privileges, &c. unto the said mill belonging.*" It appears to me, that by the true and obvious construction of this deed, the defendant is secured in the title, use, and enjoyment of the mill, and mill dam, *as it then existed.* Nor does the

release to the plaintiff of the land and water, and the water fall, further up the creek, destroy the operation of the deed to the defendant. They may exist consistently together. The plaintiff is entitled " *to the fall of water in the said creek, and the privilege of the water of the same, and the free use of any mill or mills which may thereafter be erected upon the said creek and fall of water; and the defendant shall not so raise the mill dam now erected below the said falls, as to make back water to impede any mill which may be erected by the plaintiff.*"

The prohibition in this deed, is against *raising* the mill dam then erected. The defendant was entitled to preserve the dam at the *then* existing height, and to enjoy unimpaired the mill and all its privileges as it was then, and for a long time had been enjoyed. The plaintiff was entitled to build what mills he pleased on his own ground; but then he must so exercise that right, as not to interfere with the established and existing right of the other party. He must so construct his mill, or erect it in such a place, as that he may enjoy it, *consistently* with the defendant's enjoyment of *his* dam and water. If his new mill is to interrupt the enjoyment of the prior dam and mill, the proposition would be reversed, and *his* erection would become the nuisance.

My opinion, accordingly, is, that the plaintiff has shown no right to sustain his bill, and that it must be dismissed with costs.

Decree accordingly.