# BELKNAP,

## JULY TERM, A. D. 1858.

## COE *v.* WINNEPISIOGEE LAKE COTTON AND WOOLEN MANU-FACTURING COMPANY.

A bill in equity, praying for an injunction to suppress a nuisance to the plaintiff's land, will be dismissed on general demurrer, for want of equity in the bill, unless it appears from the subject matter affected by the alleged nuisance, and the extent and nature of the injury to be apprehended from it, that there is danger of irreparable mischief, or of an injury such that it cannot be adequately compensated in a suit at law, or that the right of the plaintiff to enjoy the land, free from the molestation complained of, has been established in a suit at law.

IN CHANCERY. This is a bill for relief, to which the defendants have filed a demurrer for want of equity in the bill. The case stated in the bill sufficiently appears in the opinion of the court.

*H. A. Bellows,* for the defendants.

The complainant proceeds against the defendants for flowing, and also for drawing water from his lands, lying partly in Belknap county, and partly in Carroll county, by means of a dam and excavations on Squam river, between Squam and Little Squam lakes; but the bill does not state in what county are the dam and excavations. The dam, in point of fact, is in Grafton county.

The bill alleges a claim of right on the part of the defendants to do the acts complained of. The claim of right is stated in connection with the statement of the acts.

It is manifest, from the allegations of the bill, that there is a controversy as to the right of the defendants to do what they have done ; and the right not having been established, this suit cannot be maintained, but the court will decline the jurisdiction.

In the case of alleged nuisances, where the right is not established, and the aid of a jury is required, courts of equity will act only in aid of the courts of law ; and if the complainant states a case from which it appears that the title is contested, he states himself out of court. 1 Dan. Ch. 608, 609, and cases cited in note (o); *Weller* v. *Smeaton,* 1 Coxe 102 ; *Whitechurch* v. *Hide,* 7 Atk. 391 ; *Ld. Tenham* v. *Herbert,* 2 Atk. 483; *Reid et. als.* v. *Gifford,* 6 Johns. Ch. 19 ; *Gardner* v. *Vill. of Newburgh,* 2 Johns. Ch. 161–164 ; Eden on Inj. 274, and cases cited ; *Stone* v. *Mason,* 4 Johns. Ch. 21; *Russ* v. *Wilson,* 22 Me. 211 ; *Prentiss* v. *Larnerd,* 11 Vt. 135 ; *Smith* v. *Collyer,* 8 Ves. 59 ; *Pillsworth* v. *Hopton,* 6 Ves. 51 ; Angell on Watercourses 482, sec. 452 ; *Porter* v. *Witham & al.,* 17 Me. 292, and cases cited ; *Dana & al.* v. *Valentine,* 5 Met. 8 ; *Van Bergen* v. *Van Bergen,* 3 Johns. Ch. 282. In the present case, the right of the plaintiff has not been established as it was in *Bemis* v. *Upham,* 13 Pick. 169 ; nor is a case stated where the whole turns upon a question of law, or the construction of a statute, as in *Gardner* v. *Trustees of Newburgh,* 2 Johns. Ch. 162. But it is a case where the defendants have for several years enjoyed the right exercised, and under a claim of title.

*George & Foster,* for the plaintiff.

The bill alleges that the defendants, by means of certain artificial excavations, and the enlargement of certain natural channels, have acquired the power both of draining and of flowing the orator's land, to his great damage in the destruction of his fences, his pasturage, his timber, &c. : That they have exercised this power already to his

detriment, and that by means of certain works now in progress, described in the bill, they will be enabled, when those works shall be completed, to do him a greater and an irreparable injury : That they threaten to complete those works, and that, for relief from the threatened danger to the rights and property of the orator, proceedings at law are inadequate.

Upon general demurrer, the facts must be taken to be as alleged in the bill; and the sole question now before the court relates, we suppose, to the jurisdiction of this tribunal as a court of equity.

The injury *to* a watercourse, or *by means of* a watercourse, is a species of tort denominated a *nuisance.*

The party injured may have remedy by action, or he may himself enter and abate the nuisance.  Angell on Watercourses, sec. 389; *Batten's Case,* 9 Rep. 54, b.

The thing complained of cannot be abated until it actually becomes a nuisance; so that if one see another commencing any work which probably will, when completed, be a nuisance, it cannot be abated while in an inoffensive state; but the persons whose rights are thus in jeopardy may seek protection in a court of equity.  Angell, sec. 392; *Gardner* v. *Trustees of Newburgh,* 2 Johns. Ch. 162.

Even in cases where there may be a concurrent remedy in law, still a court of equity has jurisdiction; and its interference by injunction is founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing a multiplicity of suits.  Angell, secs. 444, 450; *Robinson* v. *Lord Byron,* 1 Bro. C. C. 588.

And it is not necessary that the complainant should first establish his right at law.  Angell, sec. 445; *Bush* v. *Western,* Prec. Ch. 530; 2 Story's Eq. Jur., sec. 927; *Webb* v. *Portland Manufacturing Co.,* 3 Sumner 189; *Charles River Bridge* v. *Warren Bridge,* 6 Pick. 376.

The equitable jurisdiction of this court is almost unlim-

ited, and there can be no doubt that this tribunal has the right to interfere, by injunction, or by any appropriate decree, in all cases where the remedy at law is inadequate, or where the remedy in equity is *more adequate* than at law. *Bemis* v. *Upham*, 13 Pick. 169.

The remedy at law, which could only give indemnity for past damages, without affording relief from present wrongs, or security against threatened mischief, is not adequate nor complete. *Bardwell* v. *Ames*, 22 Pick. 333.

In *Bemis* v. *Upham*, above cited, it was contended that a court of equity should not interfere, because, by the statute of 1828, in Mass., chap. 137, sec. 6, power was given to the court, on motion, after judgment for the plaintiff, in an action on the case for a nuisance, to order such nuisance to be removed and abated. The reasoning of the court (*Shaw*, C. J.) in answer to this objection is clear, forcible and conclusive, as we regard it, upon the question here presented. We invite the attention of the court particularly to that case, and the authorities therein cited.

It is no sufficient answer to this bill to say that the complainant has a remedy at law. The defendants must go further, and show that the remedy at law is plain and adequate, as practical and efficient, to the ends of justice and its prompt administration, as the remedy in equity. *Mayer* v. *Foulkrod*, 4 Wash. C. C. R. 349; *Boyce* v. *Grundy*, 3 Pet. 210; *Dexter* v. *Providence Aqueduct Co.*, 1 Story 387; *Shields* v. *Arndt*, 3 Green. Ch. 234; *Smith* v. *Adams*, 6 Paige Ch. Rep. 435.

SAWYER, J. In considering the questions raised in this case by the general demurrer to the bill, the facts set forth by the complainant, as constituting the grievance for which he seeks relief, must be taken as true. These facts, as alleged, divested of technicalities in the form of stating them, are substantially the following: The complainant, John Coe, is the owner of several parcels of land, one of

which is a farm situated in Center Harbor, on the southern shore of Squam lake, and the others are woodlands on certain island therein. From the products of these lands and the avails of the tillage, pasturing and wood thereon, he has heretofore derived profit and advantage. He has never made any grant, lease, sale or license of the right to flow or drain off, or in any way control the water of the lake. There is another body of water called Little Squam, situated in Holderness, connected with this lake by a river, through which the water flows from Squam to Little Squam, and thence by its outlet, called Squam river. In 1847 the defendants constructed a dam across this river, at the outlet of Little Squam, by means of which the water was raised, and the lands of the complainant flowed to some extent. In 1852 or 1853, they enlarged the channel of the river in its depth and width, for some distance from the outlet of Little Squam, and in 1854 they enlarged the channel of the stream in its whole extent between the two lakes, making it about three feet deeper than its natural bed, and in many places changing its course. By means of this enlargement they drew off the water from the surface of Squam lake, in the summer of 1856, to the depth of about three feet below the natural surface, and to the same extent lower than it had ever before been, whereby some of the trees and grass growing on the complainant's land were killed, and the land itself thrown open and common with the adjoining lands, in consequence of the receding of the water from the division fences, and he was thereby compelled to build additional fences. Since 1856 the defendants have continued the work of excavating the bed of the river at the outlet of Little Squam, and for some distance below it, and also of the stream between the two lakes, and have lowered the channel about seven feet below the natural bed. This work of excavating and enlarging the channel is nearly completed throughout the whole extent of the stream

between the two lakes. Since the building of the dam at the outlet of the Little Squam, the defendants have repaired and reconstructed it, and have raised it two feet above its original height, so that now they are able to flow back the water of Squam lake two feet higher than former high-water mark; and by means of their excavation and enlargement of the channel, when completed, they will be able to draw it about seven feet below the natural low-water mark. It is their purpose and intention to complete the excavations in which they are engaged, through the whole extent between the two lakes, and in the river, and when completed to make use of them at their pleasure, for draining off the water, and of the dam, for flowing it back to the full extent to which it may be drained and flowed by means of these works.

These are the matters of fact stated in the bill. Other matters are charged which are to be considered in connection with them in determining the questions raised by the demurrer.

It is charged that, in the belief of the complainant, the defendants had no right to build or maintain the dam, or to reconstruct it, or increase its height, and that the erection and maintenance of it was and is in derogation of the rights of the complainant, and of all others owning lands bordering on the lakes, or lying within their waters, and was and is a nuisance.

It is also charged that by means of the dam the defendants are able to throw back the water to such extent that the complainant's fences are thereby liable to be thrown down, his lands and crops exposed to the incursions of cattle from the adjoining lands, and his wood and grass to damage. The bill also charges in like manner, that by means of the excavation of the channel of the stream, when completed, the defendants will be able to draw off the water to an extent greater than, in the belief of the complainant, they have the right to do, and that the con-

Coe *v.* Winnepisiogee Manufacturing Company.

sequences of their carrying into effect their purposes and intentions, will be to destroy his grass, and thereby diminish the value of his land for mowing or pasturage; to destroy or check the growth of his trees; to expose his lands to the incursions of cattle; to impose upon him the burthen of maintaining additional fences; to hinder and obstruct the passage of logs from Squam lake through the channel to Little Squam, and from thence to the saw-mills on Squam river, at Holderness Village; to deprive him of the rightful enjoyment of his land and privileges, and to work his irreparable injury.

The prayer of the bill is for an injunction to restrain the defendants from further prosecuting the work of excavating and enlarging the channel between the lakes and the bed of Squam river; from drawing off the water to any greater extent than it was naturally accustomed to flow before the building of the dam; from throwing back the water by means of the dam upon the complainant's land, and from maintaining any dam or other obstruction at the outlet or elsewhere, which may enable them to control the flow of the water; for a decree that the defendants remove the dam and restore the outlet and channels to the condition in which they were before the erection of the dam, by filling up the excavations, and for general relief.

Upon the facts stated, and the other matters charged in the bill, the question to be decided upon the demurrer is, whether the case presented is one of which a court of equity may properly take cognizance, or whether the jurisdiction is to be declined for want of equity in the bill.

It may be assumed that the facts stated are sufficient to constitute the case of a private nuisance. It is well settled that both public and private nuisances may, under some circumstances, fall within the jurisdiction of a court of equity, both in reference to obtaining redress for injuries already sustained, and relief from further molestation by the abatement of the nuisance. Story's Eq. Ju., sec.

925. In *Coulson* v. *White,* 3 Atk. 21, Lord *Hardwicke* observed that a common trespass is not the foundation for an injunction where it is only contingent and temporary, but that if it continues so long as to become a nuisance, the court will interfere and grant an injunction. The obtaining of redress for past injury, or relief from future mischief, on account of an alleged nuisance as the direct and primary object of the bill, is not, however, of itself a branch of equity jurisprudence. The equity to support the proceedings in a case of that nature must be sought in other considerations than the mere fact that the complainant has sustained or is about to sustain damages from the alleged acts of the defendant, amounting in their character to a nuisance. In section 925 of Story's Eq. Ju., it is said, " it is not every case which would furnish a right of action against a party for a nuisance which will justify the interposition of a court of equity to redress the injury or remove the annoyance." The jurisdiction, he says, " is undoubtedly founded upon the ground of restraining irreparable mischief, or suppressing interminable litigation, or preventing multiplicity of suits." In the case of *Attorney General* v. *Nichol,* 16 Vesey 338, Lord *Eldon* says : " There are private nuisances which will support an action on the case, but which will not support an injunction." The same is laid down in 3 Dan. Ch. 1858.

It is not, then, because the bill alleges a state of facts and charges matters, which, if all true and well founded, would constitute a private nuisance, and charges damages sustained or apprehended from it, that the jurisdiction is entertained, but because other matters appear upon the face of the bill, which are recognized as ground for the interposition of a court of equity.

In a case reported as anon., 1 Ves. 476, a bill was filed, praying for an injunction to restrain the defendants from using ferry boats to the prejudice of the plaintiff's ferry, whose right to its exclusive use had been established by a

decree of the court, and the record of this decree was held by Lord *Hardwicke* to be a sufficient ground for granting the injunction before answer. In *Brown's Case*, 2 Ves. 414, a like bill was dismissed by the same lord chancellor, because the bill did not set forth that the plaintiff's right to the ferry had been established at law ; and he stated that the rule by which he felt himself bound to be governed in a case of private nuisance of that character, was, that the right set up and alleged to be violated must have been established at law, or that it must appear to have been enjoyed for a period of not less than three years.

In *Weller* v. *Smeaton*, 1 Coxe 102, the bill alleged that the defendant had erected flood-gates, by which the plaintiff's ancient mill was damaged. The flood-gates appeared, from the statements of the bill, to have been erected more than three years. The prayer was for an injunction to stay the use of the flood-gates, and for their abatement; but the bill contained no allegation that the right of the plaintiff to the use of his mill, free from the molestation or disturbance caused by them, had been established at law. A general demurrer was filed to the bill for want of equity, and it was held good, because the plaintiff's right had not thus been established. In *Churchman* v. *Tunstall*, Hard. 162, where a bill was filed by the tenant of an ancient ferry, to suppress a new one, and to obtain an injunction against renewing it, the bill was dismissed upon the same ground.

The cases in New-York are to the same effect. *Attorney General* v. *Utica Ins. Co.*, 2 Johns. Ch. 379 ; *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. 282 ; *Reid* v. *Gifford*, 6 Johns. Ch. 19. Similar doctrine is held in Massachusetts. In *Dana & als.* v. *Valentine*, 5 Met. 8, it is said by *Wilde*, J., "it has frequently been decided that when works have been suffered to remain three years and upwards, that is considered such laches as to preclude the party from having relief in a court of equity without going first to law,"

Coe *v.* Winnepisiogee Manufacturing Company.

and in that case it was decided that if it be doubtful, on the evidence, whether the defendant had the right to do the acts complained of, the court will not restrain him by injunction until the party complaining has established his right to redress in a suit at law ; and that the court will not retain the bill until a trial of the right at law, and issue a temporary injunction to restrain the defendant in the mean time, unless there is danger of irreparable injury to the plaintiff. In *Ingraham* v. *Dunnell & als.*, 5 Met. 118, it was held that a party is not entitled to an injunction to restrain a private nuisance, unless the injury arising from it will probably be irreparable, or cannot be compensated by damages recovered in a suit at law. The bill in that case was dismissed, because the plaintiff had not established his right at law, and it did not appear that there was such danger of irreparable mischief as to warrant the court in retaining the bill for the purpose of directing an issue to be tried, and in the mean time restraining the defendant by a temporary injunction. The same doctrine is held in Maine. *Porter* v. *Witham,* 17 Me. 292. These cases proceed upon the ground that the equity jurisdiction is to be entertained, when, upon the facts presented, there is danger of irreparable injury, or of damage of such nature that adequate compensation cannot be recovered at law, or when the plaintiff, having established his right to decline the jurisdiction, would subject him to oppressive and interminable litigation.

It is claimed by the plaintiff that these grounds for taking cognizance of the bill are presented in this case. It is said that the case alleged is one of danger of irreparable mischief, unless the proceedings of the defendants are arrested by the interposition of this court, and that the plaintiff expressly charges irreparable damage as the result of their acts. The statement of the bill that such irreparable mischief will follow, is to be regarded only as an expression by the plaintiff of the views entertained by

him upon his case. The court are not precluded by the matter charged from looking to the facts alleged, as setting forth the nature of the grievance, and the extent and character of the threatened injury, for the purpose of determining whether, upon the facts, the case is or may be one of irreparable injury. If it is clearly to be seen, from the subject matter of the alleged injury, and the nature of the wrong complained of, that such irreparable mischief may be wrought, there can be no doubt of the propriety of entertaining the bill. In a case of that character the court will take cognizance of it; and if the case requires it, direct a trial by jury, to try the plaintiff's right, in the mean time restraining the defendants by injunction from all injurious proceedings, and when the right is established make the injunction perpetual. Story's Eq. Ju., sec. 927.

Upon looking to the facts alleged, they present nothing of a peculiar or extraordinary character, either in the subject matter or nature of the injury threatened. The destruction of the plaintiff's grass and timber; the deterioration of his land; the throwing it open to cattle, thus rendering additional fences necessary, and the obstruction to the passage of logs, assuming that all these are the necessary consequences of the proceedings of the defendants, are the usual consequences of direct trespasses to land, or of torts, for which consequential damages may be recovered, and for which adequate compensation may be given at law. They are not of that ruinous and irremediable character to constitute a case of pressing necessity for arresting them. The exigency of the case is not thus urgent.

If the defendants should be restrained temporarily from proceeding with their work, and from using their dam and other appliances, for the beneficial enjoyment of their water power, it is not at all improbable that serious injury may thereby be occasioned to them, and for which they would have no redress, although it might be found in the result that the proceedings from which they were enjoined were

in fact but the exercise of their legal rights. This consideration is no otherwise important than as furnishing ground for the exercise of great caution in the application of a remedy for one party, which may work an equal mischief to the other. Eden on Inj. 274.

It is also said that the bill may be entertained on the ground that it will avoid a multiplicity of suits, and suppress vexatious litigation, to which the plaintlff will otherwise be driven. A suit at law between these parties, to determine the character of the acts complained of — whether tortious or rightful — cannot be deemed oppressive litigation. A trial of that question must be had if the bill is entertained, and no more is required at law. The multiplicity of suits and vexatious litigation will arise when the plaintiff, having established his right by one suit at law, is driven, by repetitions of the wrong, to bring a fresh suit for every fresh injury. If he had established his right by one such suit, his application for relief in equity might well stand upon the ground suggested — that to leave him to his legal remedy would subject him to vexatious litigation. Equity would then interpose, upon the ground that the law afforded him no adequate remedy — the only remedy which that gives him being his action for past damages, to be repeated as often as the cause of action is repeated.

Again, it is said that the case presented is one in which the remedy at law is not complete and adequate, and that the superior efficacy and adaptedness of proceedings in equity to the prompt administration of justice, furnish ground for assuming the jurisdiction. The reasoning of the court in *Bemis* v. *Upham*, 13 Pick. 169, is appealed to as conclusive in support of this position.

In that case the plaintiff had obtained a decision at law establishing his right, and it was so alleged in the bill. That case, however, turned upon a comparison of the two statutes of Massachusetts — one of 1827, chap. 88; the

other of 1828, chap. 137, sec. 6 — the former giving to their courts of equity jurisdiction in any matter touching waste or nuisance, where there was not a plain, adequate and complete remedy at law; and the latter giving to their law courts power, after judgment in an action on the case for a nuisance, to order the nuisance to be abated, as in the case of a common nuisance. The question was not, therefore, as to the general jurisdiction of courts of equity in cases of nuisance, but as to the special jurisdiction conferred by the former statute. Upon that question the court held that the power given by the latter statute to their law courts was not the plain, adequate and complete remedy within the meaning of the former. Applied to that question, the reasoning of the learned chief justice is all that is claimed for it.

But when it is urged that the remedy in equity has superior efficacy and fitness to promote the ends of justice in cases of nuisance, the inquiry is suggested, what is the mischief to which the remedy referred to, as thus superior, is considered to be addressed? If it is that damages have been sustained by reason of the nuisance, for this the remedy at law is in all respects as full and complete, and as efficacious and prompt, as in equity. Indeed, as to past damages thus sustained, equity affords no remedy when they are disconnected from all other grounds for its interposition. It is only when the mischief of damages sustained has connected with it some other mischief, such as irreparable injury threatened, vexatious and oppressive litigation to be incurred, which superinduces the equity, that the equity jurisdiction attaches. Having jurisdiction to remedy the latter mischief, by enjoining against the irreparable injury threatened, or abating the nuisance, or by such decrees, defining and establishing the rights of all parties as will avoid the necessity of multiplied suits and oppressive litigation, it then takes jurisdiction of the former as incidental, by giving redress for past damages.

Coe *v.* Winnepisiogee Manufacturing Company.

If, on the other hand, the mischief for remedy, of which equity is said to have the greater efficacy, is understood to be the danger of injury to be sustained, arising from the power and purpose of the party to do the acts complained of, and thereby occasion future damages—for this, in no case, does the law afford any remedy; in some none is afforded in equity, while in others, proper for the interposition of equity on the ground of the irreparable nature of the injury threatened, or the vexatious litigation or multiplicity of suits to be avoided by it—furnishes a remedy complete and adequate. The proposition, then, to take jurisdiction in this case, because of the superior efficacy of the equity remedy, is in effect a proposition to apply that remedy in a case where the only ground for applying it is, that, if applied, it will be complete and adequate. If applied in this case upon that ground, then it is to be applied in every case of a nuisance; and, by parity of reasoning, to every case of threatened trespass or other wrong. The proposition is substantially to change the rules of equity upon the subject of alleged nuisances, and to make them and all other grievances from which injury is to be anticipated, a branch of equity jurisprudence, instead of inquiring in each case whether a recognized ground for the interposition of equity exists in the particular case.

Upon every view that can be taken of the case, there is no equity in the bill. The demurrer must be held good, and the bill

*Dismissed with costs.*