JOSEPH OSWALD

*v.*

PETER WOLF.

*Filed at Ottawa June 15, 1889.*

1. NUISANCE—*jurisdiction in chancery — of the basis thereof.* The jurisdiction of courts of equity over the subject of private nuisances is not an original one. It does not arise from the mere fact that a nuisance exists, but results from circumstances which call it into exercise upon other grounds, such as irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing multiplicity of suits.

2. To entitle a party to equitable relief against a private nuisance before resorting to a court of law, his case must be clear, so as to be free from all substantial doubt as to his right to relief. In doubtful cases he will be turned over to his legal remedy. To entitle him to come into a court of equity in the first instance, there must be "a strong and mischievous case of pressing necessity."

3. SAME—*obstructing private right of way—whether equity will interpose.* Where one has not for a long time been in the quiet and uninterrupted enjoyment of a private right of way over the land of another, or his right has not been established at law, or is not clear, but is disputed and doubtful, a court of equity will not enjoin another, claiming adversely, from obstructing such right of way.

4. PRIVATE WAY—*when the right will pass by implication—and when the right will expire.* Where the owner of land grants a part of it, so situated that there is no access to it from any street or highway except over the land of the grantor or of a stranger, a right of way to the same over the remaining land of the grantor will pass by implication, as a way of necessity. Such a right of way will expire when the necessity for the same ceases, as, where a public street is laid out along and over the land so granted.

5. SAME—*a deed construed as granting a private way.* The owner of a tract of land bounded on the east by a street, conveyed the west third thereof, the deed containing this clause: "And also the right of way on a strip of land fourteen feet in width, running east and west, from the one-third herein conveyed to H. street, bounded by two lines running parallel to the center line of the remaining two-thirds of said tract, east and west, each being seven feet distant from the said center line:" *Held,* that the deed vested in the grantee an easement in fee, in the nature of a private way over the land of the grantor.

6. In such case, the grant was not of an alley, public or private, and was in no sense an appropriation of the strip of land over which the right of way ran, to the exclusive use of the grantee, but was a grant of a mere right of way appurtenant to the land granted, which vested in the grantor and his grantees only a right to pass and re-pass along the prescribed line or route, between the land conveyed and the street.

7. SAME—*tax title—whether paramount to the right of way, or easement.* A tax title, if valid, is paramount to all other titles and interests in the land, and the sale of a tract over which a party has a right of way, when valid and followed by a proper deed, will cut off and extinguish the right of way.

8. TAX TITLE—*by whom it may be acquired.* Persons who, by reason of their ownership of lands, or otherwise, are under a legal, or perhaps a moral, obligation to pay taxes and assessments thereon, are precluded by the policy of the law from becoming purchasers of such lands at tax sale. In case of a purchase, such party obtains no independent title, the purchase being deemed in law only a mode of paying the taxes. The same will probably apply to one under a legal obligation to pay the taxes who afterward purchases an outstanding tax title acquired by a stranger.

9. But when the land owner holds by a title acquired subsequent to the levy of the tax, and has not assumed its payment, or in any way become liable to see it paid, the reason of the rule which disqualifies one whose legal duty it is to pay the taxes from acquiring a tax title, manifestly does not exist.

10. PURCHASER—*taking subject to a lien for taxes.* In case land is sold by the owner after taxes levied thereon have become a lien, the purchaser will take his title subject to the lien; but in the absence of any express or implied covenant or undertaking to pay the taxes, he will not assume any legal liability in respect to them. He will stand in the same relation to the taxes as any other grantee whose deed is made subject to an existing incumbrance.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

This was a bill in chancery, brought by Peter Wolf against Joseph Oswald, to remove certain obstructions from a private way which the complainant claims to have over the lands of the defendant. Issues were duly formed by answer and replication, and the cause being heard on pleadings and proofs, a decree was entered in favor of the complainant.

The bill alleges that, on the 22d day of December, 1855, Peter Duffy, being the owner of a tract of land in Cook county lying on the west side of Halsted street, having a frontage on that street of twenty rods and running west eighty rods, conveyed to the complainant the west one-third of said land, together with the right of way over a strip of land fourteen feet in width running through the center of the easterly two-thirds of said tract from the land so conveyed to Halsted street; that the complainant, in pursuance of said conveyance, entered into possession of the premises conveyed to him, and has continued to enjoy the same from thence hitherto, except as hereinafter stated; that the defendant, subsequent to said conveyance, became possessed of the remaining two-thirds of said tract of land, subject, however, to the right of way granted to the complainant; that there is no communication to the complainant's premises from the north, south or east, except by said private way; that the defendant has erected obstructions upon said way, consisting of a high board fence across its western terminus, a gate at its eastern terminus, and an instrument of pleasure called a "Flying Dutchman" erected on the way between said points, which obstructions the defendant refuses to remove, and thereby prevents the complainant from enjoying the privilege of passing over said way; that the complainant has made a proposed subdivision of his premises, and that without said way, he will be greatly hindered and delayed in the sale of the same, as the most available means of access thereto is thereby cut off; that Halsted street is much travelled and has a line of street railway in operation, and is the nearest and most direct means of access to the complainant's property, over and by virtue of said private way; that the complainant will suffer irreparable injury, unless the obstructions to said way are removed, and uninterrupted enjoyment thereof given him; that the complainant has applied to the defendant to remove said obstructions, but that the defendant has wholly refused to remove the same, and by pre-

tenses that he has no objection to the use of said way, is endeavoring to obtain possession thereof, and wholly prevent the use of the same by the complainant. The bill prays that the defendant be decreed to remove all obstructions from said way, and permit the unobstructed passage of the complainant and those claiming under him, over and upon said way, and forever maintain said way in a condition to be used by the complainant and those claiming under him, and also a general prayer for relief.

The answer, among other things, denies the complainant's title to said way, and claims title in the defendant to the east two-thirds of said tract of land superior to the complainant's right of way. It alleges that, since the time the complainant claims to have obtained his title, numerous streets and alleys have been opened to and around said west one-third of said land, by means of which access to and egress from the same for any and all purposes is made easy and convenient, and that said west one-third of said land has been subdivided, platted and laid out into lots, streets and alleys by the complainant, so that there are streets and alleys running immediately through the same, furnishing easy access to each and every part thereof. It denies that the defendant is obstructing or interfering with the right of way or easement claimed by the complainant, or that he is in any way preventing the complainant from enjoying any privilege to which he is entitled; and also denies that said right of way would or could work any advantage to the complainant in the sale of his premises or any part thereof. It sets up title in the defendant to the east two-thirds of said land through conveyances of the same to him from the former owners, and also through several sales thereof made in October, 1874, for certain delinquent taxes and assessments before that time levied and assessed thereon, and certain tax deeds executed in pursuance of such sales, and a conveyance of said land to the defendant from the grantee in said tax deeds.

The answer alleges that the defendant, immediately after obtaining title to the east two-thirds of said land, enclosed the same with a high board fence, and proceeded to erect improvements thereon; that at the east terminus of the alleged private way, he constructed and has since maintained a large gate; that he improved said premises with a view of using the same for picnic grounds, and that the same have been used and devoted to that purpose almost exclusively ever since, with the full knowledge of the complainant; that during all that time the defendant has never had occasion to or desired to use said way over said grounds, and that if a right of way has ever existed, as alleged in the bill, it has been abandoned and extinguished by non-user. The answer denies that the complainant has sustained or will sustain irreparable injury, or any injury whatever, by being denied a right of way over the defendant's premises, and also denies that the complainant is entitled to any relief, and prays the same advantage as if the defendant had pleaded or demurred to the bill.

The evidence shows that, by deed dated December 22, 1855, Peter Duffy conveyed said west one-third of said tract of land to the complainant, which deed also contained the following clause: "And also the right of way on a strip of land fourteen feet in width, running east and west, from the one-third herein conveyed to Halsted street, bounded by two lines running parallel to the center line of the remaining two-thirds of said ten acre tract east and west, each being seven feet distant from the said center line." Some three or four years after said conveyance the complainant enclosed his land with a fence, and it has so remained ever since, although for the last fifteen or twenty years, the complainant himself has made no use of the land, but on one or two occasions during that time he has permitted other persons to make hay on it. At no time since the complainant owned said land has he had occasion to make use of his right of way over the defendant's land except at rare and distant intervals. According to the defendant's testimony,

which is in no way controverted, the complainant, a year or two after the defendant went into possession of his part of the tract in question, claimed of him said right of way, and then for seven or eight years he said nothing about it. The defendant took possession in 1873 or 1874, and since that time the complainant has used said way only to the extent of driving over it in his buggy four or five times, and on one occasion a load of hay was driven over it.

It is not shown that the complainant was ever denied the right of passing over the defendant's land, although it appears that the "Flying Dutchman," occupying as it did a position on the line of the complainant's way, made it necessary to diverge a considerable from said line to get past; and it also appears that a short time before the bill was filed, the defendant caused the gate at the westerly terminus of said way to be nailed up. This, according to the defendant's testimony, was done for the purpose of excluding intruders from the defendant's picnic grounds, and not with a view of excluding the complainant from said way, the defendant claiming to have been willing at all times to permit the complainant to use said way.

It does not appear that the complainant has suffered any substantial damages in consequence of not being permitted to make further use of his said private way. He himself testified on cross-examination that he did not know that he had suffered any damage so far, but on further direct examination he testified, that people would pay more for lots in his subdivision if they could get to them from Halsted street through the alley.

It is admitted by the complainant that his land is accessible from Morgan street which runs along its western boundary, and the evidence tends to show that Fifty-second street has been laid out along the north boundary line of the ten acre tract from Morgan street to Halsted street, but whether that street had been actually opened and put in a condition to be used by the public at the time of the hearing the evidence is to some degree conflicting. It also appears that the complain-

ant, sometime prior to the filing of his bill, caused his land to be subdivided and platted into blocks and lots, and in making said plat, Sangamon street was laid out running east and west across the complainant's land, leaving one tier of lots between it and the defendant's land, and also an alley running east and west dividing the residue of the complainant's land into two equal parts, both Sangamon street and the alley connecting at the easterly boundary line of the complainant's land with Fifty-second street.

Mr. PERRY A. HULL, for the plaintiff in error:

To justify the interposition of a court of equity in case of a private nuisance, it must be a strong and mischievous case of pressing necessity, or the right to the easement must have been previously established at law, and the injury must be irreparable, or such as is not susceptible of pecuniary compensation, and it must appear that the party seeking the relief has not been guilty of *laches;* and even then a court of equity will not interfere, if by so doing serious damage would be inflicted upon the defendant without doing any practical good to the complainant. The following authorities fully sustain the above rule: 2 Story's Eq. Jur. secs. 925, 925 b, 925 f; *Washburn on Easements and Servitudes,* (4th ed.) 747-750; *Wood* v. *Sutcliff,* 8 Eng. L. and Eq. 217; *Reid* v. *Gifford,* 6 Johns. Ch. 19; *VanBergen* v. *VanBergen,* 3 id. 286; *Amelung* v. *Seekamp,* 9 G. & J. 472; *King* v. *McCully,* 38 Pa. St. 76; *Coe* v. *Manufacturing Co.* 37 N. H. 255; *Weller* v. *Smeaton,* 1 Cox, 102; *Dana* v. *Valentine,* 5 Metc. 8; *Ingraham* v. *Dunnell,* id. 118; *Porter* v. *Witham,* 17 Me. 292; *Dunning* v. *Aurora,* 40 Ill. 481; *Bliss* v. *Kennedy,* 43 id. 67; *Railway Co.* v. *Anderson,* 108 id. 64; *Parker* v. *Winnipisogee L. C. & W. Co.* 2 Black, 545.

It has also been held, that "no injunction will be granted whenever it will operate oppressively or inequitably, or contrary to the real justice of the case, or where it is not the fit and appropriate mode of redress under all the circumstances

of the case, or where it will or may work an immediate mischief or fatal injury.  Thus, for example, no injunction will be granted to restrain a nuisance by the erection of a building where the erection has been acquiesced in or encouraged by the party seeking the relief."   2 Story's Eq. Jur. sec. 959 a; Washburn on Easements and Servitudes, *578; *Elmhurst* v. *Spencer,* 2 M. & G. (Eng. R.) 45.

Oswald had not assumed to pay taxes levied or assessed prior to 1873, on the part of the land then owned by him, and was not liable to pay them, and therefore neglected no duty in not paying them.   Blackwell on Tax Titles, (4th ed.) 444-448; *Smith* v. *Lewis,* 20 Wis. 356; *Lybrand* v. *Haney,* 31 id. 233; *Bowman* v. *Kockrill,* 6 Kan. 331; *Moss* v. *Shear,* 25 Cal. 45, *et seq.*

Mr. ELMER W. ADKINSON, for the defendant in error:

A court of equity will enforce the opening of an alley, (*Kuecken* v. *Voltz,* 110 Ill. 264,) and will also enjoin the obstruction in closing an alley.   *Cihak* v. *Klekr,* 117 Ill. 643; *McCann* v. *Day,* 57 id. 101.

The defendant in error is not seeking merely to enjoin a trespass, but to restrain the plaintiff in error, under color of right, from taking absolute possession of an easement to which he had no right, and inflicting a continuing and permanent injury upon the appellee.   In such a case injunction is the proper remedy.   *Peoria* v. *Johnston,* 56 Ill. 45; *Smith* v. *Bangs,* 15 id. 402.

A bill in equity lies to restrain a permanent and continuing injury to private easements.   High on Injunctions, sec. 849; Washburn on Easements, (4th ed.) 749, par. 4.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The deed under which the complainant claims title, conveyed to him, not only the west one-third of the tract of land in question, but also the right to a private way over the remaining

two-thirds of said tract from the land so conveyed to Halsted street. He now claims that said private way has been and is being obstructed by the defendant, and he therefore invokes the aid of a court of equity to remove the obstruction, and to confirm him in the use of his easement over the defendant's land.

By his answer, the defendant denies the complainant's title to said easement, and in support of such denial, he sets up an extinguishment of the easement, first, by abandonment and non-user, and second, by the sale of the servient estate for a delinquent assessment legally levied thereon, and a tax deed executed in pursuance of such sale, the defendant being the grantee of the paramount title thus acquired. The defendant also alleges that the private way claimed by the complainant has not been improperly obstructed, the obstructions complained of being only the proper means of protecting the defendant's land against intruders, and that he has never in fact denied the complainant the privilege of passing over his land when applied to by the complainant for that purpose. The answer further insists that, as the complainant's premises are now situated, the private way now claimed by him is of no substantial value, and that no substantial damage can result to the complainant from being deprived of the use of it. The evidence on the part of the defendant will be discussed hereafter, it being sufficient at this point to say, that it tends to support the allegations of the answer.

The question is presented at the threshold of the case, and is elaborately argued by counsel, whether the case made by the pleadings and proofs is one calling for the interposition of a court of equity. If it is not, it will of course be needless for us to spend any time in considering the merits of the controversy.

The jurisdiction of courts of equity over the subject of nuisances is not an original jurisdiction. It does not arise from the mere fact that a nuisance exists, but results from circumstances which call the jurisdiction into exercise upon other

grounds. Thus, as said by Mr. Story: "In regard to private nuisances, the interference of courts of equity by way of injunction is undoubtedly founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing multiplicity of suits. It is not every case which will furnish a right of action against a party for a nuisance, which will justify the interposition of courts of equity to redress the injury or remove the annoyance. But there must be such an injury as from its nature is not susceptible of being adequately compensated by damages at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance which cannot be otherwise prevented but by injunction." 2 Story's Eq. Juris. sec. 925.

Even this power was formerly exercised very sparingly and only in extreme cases, at least until after the right and question of nuisance had been first settled at law. While in modern times the strictness of this rule has been somewhat relaxed, there is still a substantial agreement among the authorities, that to entitle a party to equitable relief before resorting to a court of law, his case must be clear, so as to be free from all substantial doubt as to his right to relief. Even Mr. Wood, who seems to be an advocate of a very broad and liberal interpretation of the jurisdiction of courts of equity in matters of nuisance, admits that, "in order to entitle a party to equitable relief, his right must be clear, and the injury established, as in doubtful cases the party will be turned over to his legal remedy." Wood on Nuisances, sec. 786. Many other authorities hold, that to entitle a party to resort to a court of equity of the first instance, there must be "a strong and mischievous case of pressing necessity."

In *Burnham* v. *Kempton*, 44 N. H. 78, it is said: "Ordinarily a court of equity will not take upon itself to decide the fact that a nuisance exists, but will require that the party first establish his right at law. There are exceptions to this rule,

as, where the right is admitted, or the facts are all admitted, so that the court can determine, from the admitted facts, whether it is a case of nuisance or not. There could, of course, be no occasion for a trial at law in such a case. So in some cases where a party has been long in the quiet and uninterrupted enjoyment of a right, another party will be restrained from interfering with that right, until he proves his right at law."

In *Rhea* v. *Forsyth*, 37 Pa. St. 503, the court, after reviewing the authorities, lays down the rule as follows: "Where the plaintiff's right has not been established at law, or is not clear, but is questioned on every ground on which he puts it, not only by the answer of the defendant but by proofs in the cause, he is not entitled to remedy by injunction. It is not enough that he is able to produce some evidence of his right, when there is conflicting evidence that goes to the denial of that right. In a case so situated the plaintiff should first establish his right by an action at law, and then come into chancery, if necessary, for the protection of the legally established right."

In *Gardner* v. *Village of Newburgh*, 2 Johns. Ch. 162, Chancellor KENT based the right of equitable interposition in cases of nuisances upon the principle "of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right which, upon just and equitable principles, ought to be prevented." In *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. 282, the rule was stated by the same chancellor as follows: "The cases in which chancery has interfered by injunction, to prevent or remove a private nuisance, are those in which the nuisance has been erected to the prejudice or annoyance of a right which the other party had long previously enjoyed. It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law."

In *Carlisle* v. *Cooper*, 21 N. J. Eq. 576, the court in discussing the basis upon which the jurisdiction of courts of equity

in cases of nuisance rests, say: "It does not arise from the fact that a nuisance exists, but results from the circumstance that the equitable power of the court is necessary to protect the party from an injury, for which no adequate redress can be obtained by an action at law, or its interference is necessary to suppress interminable litigation, for the recovery of damages for an actionable wrong. As a condition to the exercise of that power, it is essential that the right shall be clearly established, or that it should previously have been determined by an action in the ordinary tribunals for the adjudication of the rights of the parties, and the injury must be such, in its nature or extent, as to call for the interposition of a court of equity."

"The question as to what is a nuisance is one peculiarly fitted for the investigation of a jury, and in an ordinary case, where the event of a suit in equity depends upon a legal right, the right must be ascertained in an action at law, before any relief can be granted in a court of equity." 2 Story's Eq. Juris. sec. 925 b.

The cases to be found in the reports illustrative of the rules above stated are very numerous. Reference is made to the following: *Eastman* v. *Company,* 47 N. H. 71; *Attorney General* v. *Heishon,* 18 N. J. Eq. 410; *Shields* v. *Arndt,* 4 id. 234; *Hackensack Improvement Commission* v. *New Jersey Midland Ry. Co.* 22 id. 94; *Wolcott* v. *Melick,* 11 id. 204; *Goodall* v. *Crofton,* 33 Ohio St. 271; *Kennerty* v. *Etiwan Phosphate Co.* 17 S. C. 411; *Clack* v. *White,* 2 Swan, 540; *Fisk* v. *Wilbur,* 7 Barb. 395; *White* v. *Forbes,* Walker, (Mohc.) 112; *Hacke's Appeal,* 101 Pa. St. 245; Washburn on Easements, (3d ed.) 700; Adams' Equity, 311.

Do the pleadings and evidence in this case establish a right in the complainant to equitable relief within the meaning of the rules above laid down? There can be no doubt that the deed from Peter Duffy to the complainant, dated December 22, 1855, vested in the complainant, in fee, an easement,

in the nature of a private way, over the land now belonging to the defendant. When that deed was executed, however, the land conveyed was a tract of open prairie land, adjacent to no street, and wholly surrounded by lands belonging to other parties. So far as appears, Morgan street which now bounds the complainant's land on the west, had not then been laid out. The only way by which the complainant could then reach the lands conveyed to him from a street or highway was over the remaining lands of his grantor, or over the lands of strangers, and if the deed had not in express terms granted a right of way over the grantor's lands, there can be no doubt that such way would have passed by implication as a way of necessity. We would not be understood as holding that the way granted was a way of necessity and nothing more, since the grant was manifestly in fee, while a right of way by implication would expire whenever the necessity from which the implication arose ceased to exist. In other respects, however, there was no essential difference. The grant was not of an alley, public or private, and was in no sense an appropriation of the strip of land over which the right of way run to the exclusive use of the complainant, but was a grant of a mere right of way, appurtenant to the land granted undoubtedly, which vested in the complainant and his grantees only a right to pass and repass along the prescribed line or route, between the land conveyed and Halsted street.

The complainant's land has been enclosed for many years with a fence, but no one has occupied it, and no use has been made of it for purposes of cultivation or otherwise, except that on one or more occasions several years ago, certain parties were permitted by the complainant to cut the grass growing on it for hay. Apparently said land is being held by the complainant, not for any immediate use, but in anticipation of the time when it can be made available for suburban or city lots. Morgan street has now been opened along its western bound-

ary, and that street connects at intervals with various other streets running east and west, and by means of them with Halsted street and other streets in the vicinity. Fifty-second street has been laid out along its northern boundary, running from Morgan to Halsted street, and the preponderance of the evidence, as we think, shows that street to have been open to public use. The complainant, with the view doubtless of putting his land on to the market in the form of building lots, has subdivided and platted it into lots and blocks. The plat contains three blocks extending north and south across the entire tract. Between the easterly block and the one next west the complainant has laid out Sangamon street, and between the block last mentioned and the westerly block he has laid out an alley, the street and alley both intersecting, at the north line of the complainant's land, with Fifty-second street. Access is thus given from a public street to every lot on the complainant's subdivision, and the necessity of seeking access to his property by means of the private way over the defendant's land has ceased to exist. Even if it should be held that the complainant still holds and owns said right of way and that the same has not been extinguished as the defendant alleges, it is difficult to see how it can be regarded as a right of any substantial value. It is absurd to suppose that purchasers of city lots would invest their money in such lots, depending for access thereto upon a private way over the lands of another proprietor, and certainly after access is given to every lot by a public street abutting thereon, the existence of a right to such private way would scarcely be deemed a recognizable factor in their market value.

Even then if the complainant still owns the right to said private way, the denial of his right by obstructing said way, cannot be held to present a strong and mischievous case of pressing necessity, upon which a court of equity should feel constrained to grant relief before the complainant's right had been established at law. No interest will be jeoparded, no

irreparable damage incurred, by the delay necessary to a trial of his rights in that tribunal.

But the question still remains whether, in view of all the evidence, the complainant's legal right to said private way can be said to have been clearly established. His right is explicitly denied by the answer, and the evidence, to say the least, tends to show that said right was extinguished by the sale of the entire tract of land now owned by the defendant for a delinquent assessment, and a subsequent execution of a tax deed to the purchaser.

It cannot be doubted that the title conveyed by the tax deed, if said deed is valid, is paramount to all other titles and interests in said land. It must therefore be held, if valid, to have cut off and extinguished the complainant's easement.

The evidence afforded by the record as to the defendant's title to the east two-thirds of the ten acre tract in question is as follows: The defendant, by his answer, claims to have obtained title through Martina Sproehnle, who, as he alleges, was the owner of said east two-thirds of said tract. The evidence shows a conveyance, dated May 10, 1873, of the south half of said east two-thirds from Martina Sproehnle to Jacob Scheuler, and a conveyance of the same date of the north half from Martina Sproehnle to the defendant. The answer alleges a subsequent conveyance of said south half from said Schueler to the defendant, but such conveyance is not shown by the evidence. It appears that before the defendant purchased or had any interest in any portion of said tract, an assessment was levied on the whole of said east two thirds for an improvement of Scammon avenue, such assessment being confirmed by the County Court of Cook county April 9, 1873. This assessment seems to have been regularly returned delinquent by the town assessor, and on application by the proper officer, judgment was rendered for said assessment against said land by said county court at its August term, 1874. Said land was sold in pursuance of said judgment October 2, 1874, one

Coleman becoming the purchaser. The tax certificate was assigned by Coleman to John McCaffrey, and a tax deed was subsequently executed to him. On the 21st day of October, 1879, and after the execution of said tax deed, McCaffrey and wife conveyed said land to the defendant. Said tax deed is apparently regular on its face, and a judgment and precept apparently valid, were read in evidence, and nothing was shown by the complainant tending to invalidate said deed. The chancellor, as it seems, disregarded the tax title, upon the theory that, as the defendant was the owner of the land at the time of the tax sale, the purchase by him of the tax title is to be regarded in law only as a mode of paying the assessment levied upon his land, and that such title could not therefore be set up in bar of the complainant's title to his easement.

The rule is well settled that persons who, by reason of their ownership of lands or otherwise, are under a legal or perhaps a moral obligation to pay taxes and assessments thereon, are precluded by the policy of the law from becoming purchasers of such lands at a tax sale. In case of a purchase, such party obtains no independent title, the purchase being deemed in law only a mode of paying the taxes. *Choteau* v. *Jones,* 11 Ill. 300; *Frye* v. *Bank of Illinois,* id. 367; *Voris* v. *Thomas,* 12 id. 442; *Ralston* v. *Hughes,* 13 id. 469; *Baily* v. *Doolittle,* 24 id. 577; *Bracken* v. *Cooper,* 80 id. 221; *Busch* v. *Huston,* 75 id. 343; *Lewis* v. *Ward,* 99 id. 525; *McAlpine* v. *Zitzer,* 119 id. 273. The same rule would probably be held to apply to one under a legal obligation to pay the taxes who afterwards purchases an outstanding tax title acquired by a stranger.

But we are of the opinion that this rule does not apply to the facts in this case. The assessment for which the land was sold was levied before the defendant acquired any interest in said land. At the time he purchased it was a subsisting lien, and his relations to it, so far as the duty of payment is concerned, were in no respect different from what they would have been to any other incumbrance on the land. He must

be deemed to have taken his title subject to the lien, but in the absence of any express or implied covenant or undertaking to pay it, he assumed no legal liability in respect to it. In *Chambers* v. *The People*, 113 Ill. 509, a party purchased at a judicial sale lands upon which certain taxes had been levied and at the time of the sale were due and unpaid. The decree found the amount of taxes due and ordered the land sold subject to the taxes as an incumbrance. The question having arisen as to whether the purchaser became personally liable for said taxes, this court said: "There is nothing to show that appellant, in making his purchase, or in any other way, ever assumed or promised to pay the taxes on these lots, or any part thereof. Appellant stands in the same position as any other grantee whose deed is made subject to an existing incumbrance. If he assumes to discharge the same by paying a given amount, as, with a part of the purchase money retained for that purpose, he becomes personally responsible to the holder of the incumbrance; but by simply taking a conveyance subject to a prior lien, imposes no personal liability on the grantee to remove the same, but he takes the land subject to the amount of the incumbrance."

The reason why an owner of land is disqualified to purchase it at a tax sale is, that permitting him to become such purchaser would enable him to take advantage of and reap a benefit from his own neglect of a legal duty. But where the owner holds by a title acquired subsequent to the levy of the tax, and has not assumed its payment or in any way become liable to see it paid, that reason manifestly does not exist. There no legal or moral duty is neglected by failing to pay the tax. The doctrine is well stated in the separate opinion of DIXON, C. J., in *Smith* v. *Lewis*, 20 Wis. 350, as follows: "It will be found, on examination of the adjudged cases, that the turning point in all of them was, the obligation of the party setting up the title to pay the taxes. If he was under such obligation, either from having been in possession and

liable to pay taxes at the time of the assessment, or 'from their having been properly assessed against him, or by reason of any covenant or promise to the party against whom he claimed the title, the deed in such cases has been held unavailing. It is void because it was obtained in violation of the duty of the person claiming title under it. But the mere purchase of the premises from the mortgagor or owner after the assessment and sale and before redemption, or possession of them at the expiration of the time for redeeming, imposes no obligation to pay or redeem."

The foregoing opinion, though not concurred in by the majority of the court, was afterward cited with approval by the same court, and its principles adopted, in *Lybrand* v. *Haney,* 31 Wis. 230. There certain tax deeds to the plaintiff executed in pursuance of sales for unpaid taxes levied before he became the owner of the lands, were sustained. The court, in holding that the general rule precluding the owner of lands from purchasing them at a tax sale did not apply, said: "He was under no legal obligation to pay taxes assessed upon the lands before he became the owner thereof, or before he went into· possession claiming to be such owner. He could pay such taxes or abstain from doing so as he pleased. Hence the taking of tax deeds upon certificates issued on the sales for the non-payment of taxes instead of paying the taxes was no violation of any duty or obligation."

The rule is stated in *Moss* v. *Shear*, 25 Cal. 38, as follows: "If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying of a stranger who purchased at the sale. Otherwise he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes. This the law does not permit, either directly or indirectly. On the contrary, if the defendant was under no legal or moral

obligation to pay the taxes, there is no principle of law or equity which precludes him from purchasing at the sale, although in possession at the time the assessment was made or when the land was sold." See also, *Bowman* v. *Cockrill*, 6 Kan. 311; 1 Blackwell on Tax Titles, (5th ed.) sec. 566, *et seq.*

It follows from what has been said, that the tax deed read in evidence by the defendant in this case, is apparently valid, and establishes an apparent extinguishment of the complainant's easement over the defendant's land. The only conclusion which need be drawn in this case, based upon said tax deed, is, that the complainant's legal title is so uncertain, and so far in dispute, that a court of equity ought not to take jurisdiction. A court of law is the proper tribunal for the trial and settlement of legal titles, and the complainant should therefore be remitted to that court for the establishment of his right.

The decree of the Superior Court will be reversed and the cause remanded to that court, with instructions to dismiss the bill at the complainant's costs, but without prejudice to his right to pursue any proper remedy in a court of law for the establishment of his legal title, or to again apply to a court of equity for relief after having established his right at law.

*Decree reversed.*